Willie Lee BUSH, Appellant,

v.

The STATE of Texas, Appellee.

No. 48245.

Court of Criminal Appeals of Texas.

March 13, 1974.

**604**

Richard F. Ferrary, Austin, for appellant.

Robert O. Smith, Dist. Atty., Charles Craig, Asst. Dist. Atty., Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation.

On August 10, 1972, appellant entered a plea of guilty before the court to the offense of burglary of a private residence at night. His punishment was assessed at five (5) years, but imposition of sentence was suspended and he was placed on probation subject to certain probationary conditions, among which is found: "(2) Commit no offense against the laws of this or any State or of the United States."

On December 6, 1972, a motion to revoke probation was filed, but does not appear to have been acted upon. On March 9, 1973, another motion to revoke was filed alleging that the appellant had committed the offense of robbery by assault.

On May 31, 1973, the court conducted a hearing on such motion at the conclusion of which the court revoked probation.

Appellant contends the court abused its discretion in doing so because the evidence is insufficient to show that he was guilty as a principal to the offense of robbery by assault.

Boyd Armstrong testified that on February 26, 1973, he was robbed at a Stop and Go Store in Travis County by Calvin Wilson and Ben Earl Mitchell. He related they "took money and other things" and tied him up in the back room of the store where he was employed.

Roger Napier, Austin city police officer, testified he took an extrajudicial confession from the appellant which reads in part as follows:

"My name is Willie Lee Bush, I am 22 years old and I live at 1608 East 10th St. Sgt. Napier has explained my rights to me and I know I dont have to make any statement but I have decided to make the following statement which is the truth to the best of my ability.

"Sometime around 2:00 Am Monday, morning 2–26–73, Ben Earl Mitchell, Calvin Lee Wilson and Earnest Lee Moss came by my house in a blue Buick Riveria belonging to Earnest Lee Moss.

"Ben Earl Mitchell came inside and asked me to go with them for a ride, so we rode down Airport Blvd. and up on 11th St. some. While we were riding around they talked about a pistol they ripped off of an old man earlier. Earnest Lee Moss was driving and we drove out the interregional to 38th St. Ben Earl Mitchell told Earnest to drive by the Stop and Go so he could look at it and see who all was inside. Ben Earl then told Earnest Lee to park the car by some Moving Co. truck on the parking lot next to the store. Ben Earl and Calvin Lee Wilson had said they were goint (sic) to rip off the man in the store so they got out and took two wigs with them and as they walked over to the store they put the wigs on and went into the store. Earnest Lee got out of the car which was parked by one of the big

trucks and walked to the end of the truck and looked over towards the store. In a little bit Calvin and Ben came running out of the store and ran back to the car. They were carring (sic) some cartons of cigarretts, (sic) bottles of wine and a money bag. They said they had tied the man up and told Earnest Lee to drive south on Lafayett St. We went back up on 12th St. and I got out at Little Glory's and the other three went to hide the stuff from the Robbery and said they would come back to get me later.

"They came back about 15 minutes later and we drove out the Interregional to Hwy—290 and they kept talking about getting some big money. We drove out 290 to a U-To-Tem Store and parked on the street beside it and Ben Earl Mitchell and Calvin Lee Wilson put on their wigs and started to go rob the U-Totem and Ben Earl was beside the store and Calvin Lee was in the phone booth when a Police car drove up. Ben Earl ran back to the car and we drove off.

"I think Calvin got caught by the Police at the store. The Police stopped us at 11th and the Interregional and arrested us."

When A actually commits the offense, but B is present, knowing the unlawful intent, and aids by acts or encourages by words, then B is a principal. Middleton v. State, 86 Tex.Cr.R. 307, 217 S.W. 1046 (1920). B is also a principal when he advises or agrees to the commission of the offense, and is present when the same is committed whether he aids in the commission of the offense or not. Middleton v. State, supra.

In determining whether a party was acting as a principal, the trial court may look to events before, during and after the commission of the offense. Westfall v. State, 375 S.W.2d 911 (Tex.Cr.App.

1964). Further, "[A]n agreement of parties to act together in a common design can seldom be proven by words, but reliance can often be had on the actions of the parties showing an understanding and common design to do a certain act." Everett v. State, 153 Tex.Cr.R. 79, 216 S.W.2d 281, 283 (1949).

When the extrajudicial confession is considered in the light of the above, we conclude that it is sufficient to show that appellant was a principal. Cf. Mills v. State, 417 S.W.2d 69 (Tex.Cr.App.1967); Washington v. State, 442 S.W.2d 395 (Tex.Cr.App.1969).

It should further be borne in mind that an uncorroborated confession of a probationer constitutes sufficient evidence for the court to revoke probation. See Smith v. State, 160 Tex.Cr.R. 438, 272 S. W.2d 104 (1954); Hulsey v. State, 447 S. W.2d 165 (Tex.Cr.App.1969); Tollett v. State, 456 S.W.2d 909 (Tex.Cr.App.1970); Campbell v. State, 456 S.W.2d 918 (Tex. Cr.App.1970); De Leon v. State, 466 S. W.2d 573 (Tex.Cr.App.1971); Hicks v. State, 476 S.W.2d 671 (Tex.Cr.App.1972).

Next, appellant contends the trial court abused its discretion in revoking probation because the record does not show that he was served with a copy of the conditions of probation as required by Article 42.12, Sec. 6, Vernon's Ann.C.C.P. Such statute does require the clerk of the court to furnish a copy of such terms and conditions and note the date of delivery of such copy on the docket.

There can be no question that this duty should be performed. Avalos v. State, 480 S.W.2d 382, 383 (Tex.Cr.App. 1972). We do not view the statute as requiring that an order to revoke is void because there was no showing that such duty was performed where no question of the same is raised at the revocation hearing.[1]

---

1. The better practice is for the clerk or other competent witnesses to testify as to the performance of such duty.

The question of the performance of such duty may not be raised for the first time on appeal.

The appellant did not raise the question during the revocation hearing, and does not now assert he did not receive a copy of such conditions or was unaware of the same, but contends the record does not expressly reflect the performance of such statutory duty.

The contention is without merit.

The judgment is affirmed.