**Ex parte Lonnie D. PRIOR.**

No. 52297.

Court of Criminal Appeals of Texas.

Sept. 15, 1976.

Ted R. Cackowski, Austin, for appellant.

William B. Mobley, Jr., Dist. Atty., James Folsom, Asst. Dist. Atty., Corpus Christi, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an application for a post-conviction writ of habeas corpus under the provisions of Article 11.07, Vernon's Ann.C.C.P., wherein the convicting court denied relief and forwarded the findings of fact and conclusions of law to this court.

The record reflects that on September 2, 1971, the petitioner entered guilty pleas before the court to felony informations charging him with burglary, robbery and rape. The court assessed punishment at twelve (12) years for the burglary, and at thirty (30) years each for the rape and the robbery. No appeals were taken.

In his habeas corpus application petitioner claims that at the time of his guilty pleas in the rape and robbery cases[1] he was denied the effective assistance of counsel required under both the federal and State constitutions and that the State suppressed material evidence of an exculpatory nature favorable to the defense.

Petitioner contends that his counsel was appointed on the same day he pled guilty to the rape and robbery charges, that counsel wholly failed to investigate the case, contact witnesses or in any meaningful way discuss with petitioner the facts and possible defenses. He urges that if counsel had done so counsel would have discovered that the "uncontroverted facts" would show petitioner was in a state of unconsciousness during the criminal episode involving the robbery and rape and was in such state until his arrest by the police. He alleges counsel led him to believe that he had no reasonable alternative other than to plead guilty. Petitioner appears to contend that he did not understand that mere presence alone would not constitute one a principal under the law in effect at the time of the offenses.

Additionally, petitioner urges that the State was in possession of statements, written or oral, and information to the effect he was in a state of unconsciousness during the criminal episode involving the robbery and rape and suppressed the same.

It appears from the record that the petitioner Prior, John Glen Houk, Michael Z. Morris and Edward Glen Justis arrived in Nueces county from Missouri shortly before the offenses. In the late night hours of August 24th or the early morning hours of August 25th the burglary offense was committed, and subsequently the offenses of robbery and rape, which grew out of the same transaction, occurred. About ten minutes after the robbery was reported and while the offense of rape was in progress the car in which the foursome and the prosecutrix were riding was stopped by police and the petitioner and his companions were arrested. It appears that while confined in the county jail the petitioner and his companions were approached by District Attorney's investigators and offered twelve (12) years for the burglary and thirty (30) years each for the robbery and rape in exchange for guilty pleas. On September 2, 1971, the foursome were taken from jail into court. None had been indicted. Four attorneys, who were then in court, were appointed to represent the petitioner and his three companions. Each waived the presentment of indictments in the burglary, robbery and rape cases and agreed to be prosecuted on informations, which were then filed. Each waived arraignment and entered guilty pleas to the informations, waived trial by jury, waived the privilege against self-incrimination and the right of confrontation of witnesses. There was an agreement to stipulate testimony. While the guilty pleas were heard together, the trial court conducted separate trials on each offense. Before each trial, the trial court carefully and with great detail admonished the petitioner and his co-defendants in accordance with Article 26.13, Vernon's Ann.C.C.P., as it then existed. In each instance the 22 year old petitioner assured the court that he was pleading guilty because he was guilty. In the burglary case, in addition to the stipulated testimony of the owner of the build-

---

1. The petitioner makes no attack upon the validity of his conviction for burglary, which the evidence reflects occurred a short time before the other offenses.

ing in question, the State offered the written extrajudicial confession of petitioner's co-defendants. The appellant then made a judicial confession. In the robbery case the stipulated testimony showed that Houk and Morris, armed with a knife and an ice cream scoop, entered Jeto's store around 1:30 a. m. on August 25, 1971, and placed a knife against the neck of J— L— S—, an employee, forced her to call the manager into the room, and then took $271.00 and the employee with them when they left in an automobile. Such stipulated testimony also showed that they were stopped a short time later by police. Houk and Morris were in the rear seat with J— L— S— in a state of undress and Justis was driving and petitioner was in the front seat. Petitioner made a judicial confession and his appointed counsel in interrogation went over the waiver of petitioner's rights and determined that petitioner was pleading guilty because he was guilty and that he was doing so voluntarily. The three co-defendants also made judicial confessions.

In the rape case the stipulated testimony of J— L— S— reflected that she was taken from the scene of the robbery and placed in the back seat of a car by Houk and Morris, a car also occupied by Justis and the petitioner, and that while the car was being driven away from the robbery scene she was raped by Houk and Morris. Other stipulated testimony showed that the car was stopped by police and the four men arrested. Again petitioner made a judicial confession and his counsel again interrogated him as to his understanding of his rights and the waivers thereof, mentioning the fact that he (counsel) had gone over the statements of State's witnesses with the petitioner before the guilty plea. Petitioner testified he was voluntarily pleading guilty because he was guilty.

Following the guilty pleas, the appellant was sentenced in each case after waiving the time in which to file a motion for new trial or in arrest of judgment. As noted earlier, no appeals were taken.

At the habeas corpus hearing on February 5, 1976, the 26 year old petitioner testified that at the time of the guilty pleas he was 22 years old, had a tenth grade education and had been in a reformatory at age 20. He related that he had come from Missouri with the three co-defendants and readily admitted his part in the burglary, but stated he had been drinking heavily since about 1 p. m. on August 24, 1971, and that at the time of the robbery and rape he was passed out and unconscious in the front seat of the car; that he didn't remember anything from the time he got into the car until he was jerked out of the car at the time of his arrest. He related that subsequently a "deputy" or "detective" came to the jail to take a statement and when he asked for a lawyer, was told "you'll talk to a lawyer when I'm ready." He stated for this reason he did not give a statement, but he agreed with the others to the "offer" made if he pled guilty. He related that when he was brought to court his appointed counsel told him "it looked like a hard case," but he (counsel) would try it before a jury if desired, but counsel did not tell him about "accomplice liability,"[2] and said "I was good for the crime because I was with the people that done it"—"just being there at the scene, that was enough"—"that being there in the car at the scene of the crime being committed was good enough to get me on a conviction." Petitioner related that it was his understanding that his mere presence in the car was sufficient to convict him and counsel did not inform him to the contrary. He related he told counsel about drinking all day, but couldn't recollect whether he told counsel he was unconscious during the robbery and the rape, but figured it was in the statements counsel had (apparent reference to the District Attorney's file made available to counsel). He claimed he didn't discuss the facts of the case with his appointed counsel.

Two of petitioner's co-defendants testified that appellant had passed out in the front seat of the car at least forty-five

2. Counsel for petitioner at the habeas corpus hearing was apparently referring to the law of principals in existence at the time of the offenses and convictions.

minutes before the robbery and was unconscious during both offenses.

The Assistant District Attorney who prosecuted the cases testified he gave petitioner's attorney before trial the State's file or at least that was his practice. He knew of nothing in the file (consisting of statements and the offense reports) which reflected any indication that the petitioner was unconscious. He did not talk to any of the State's witnesses as the offers to plead guilty came prior to indictment and he used the State's file to formulate the stipulations entered into.

Petitioner's appointed counsel testified he had practiced law since January, 1935, and over fifty per cent of his practice was in the field of criminal law. He recalled his representation of the petitioner, but did not recall his conversations with the petitioner except that he recalled petitioner never indicated he was unconscious. He related he had never permitted a client to plead guilty without talking to him about his participation in the crime, and that there were a number of ways a person could be a principal under the law. He could not recall whether he had talked to any of the witnesses or not.

At an additional evidentiary hearing ordered by this court after the original evidentiary hearing the prosecutrix testified that when she was brought to the car after the robbery the petitioner was in the back seat of the car and was told to get in the front seat, which he did; that before he laid down in the front seat he asked what was going on and was told to go back to sleep, but she did not relate this latter statement to any of the police officers. As a result of the attack upon her in the rear seat, she did not observe him until just before the police car pulled up, at which time she observed him raise up in the front seat. Three arresting officers testified that just before they stopped the car in question the person in the front passenger seat threw some objects out of the window. After stopping

the car, the officers discovered a large amount of money scattered on the side of the car from which it was thrown. One officer also believed a knife had been found.[3] This is the record we have before us.

■ First, we shall consider appellant's contention that the State suppressed material favorable to the defense. This was obviously the fact that petitioner was passed out or unconscious during the robbery and rape offenses, and the same was not revealed to the petitioner or his counsel. Initially, it should be noted that the petitioner knew of his condition and could not recall whether he revealed the same to his counsel. Since petitioner knew of his condition at the time of the offenses prior to trial, he cannot attribute to the prosecution the suppression of evidence. Cf. *Means v. State*, 429 S.W.2d 490, 496 (Tex.Cr.App. 1968). Further, the record reflects that the prosecutor turned his file over to petitioner's counsel prior to trial and nothing in the file or in this record shows the State had any knowledge that petitioner was unconscious at the time he claims. The prosecutor testified the first he knew about petitioner's claimed condition was when he read the habeas corpus application. Petitioner's contention that there was suppression of evidence is without merit.

■ Turning to petitioner's claim of ineffective assistance of counsel, we observe that the determination of such question must turn upon the particular circumstances of each individual case. See *Ex parte Gallegos*, 511 S.W.2d 510 (Tex.Cr.App.1974).

■ The constitutional right to counsel, whether counsel be appointed or retained, does not mean errorless counsel whose competency or adequacy of his representation is not to be judged by hindsight. *Byrd v. State*, 421 S.W.2d 915 (Tex.Cr.App.1967); *Johnson v. State*, 421 S.W.2d 918 (Tex.Cr. App.1967); *Fletcher v. State*, 396 S.W.2d 393 (Tex.Cr.App.1965). See also *Butler v.*

---

**3.** This testimony was consistent with the offense report which was introduced into evidence.

*State*, 499 S.W.2d 136 (Tex.Cr.App.1973); *Jackson v. State*, 491 S.W.2d 155 (Tex.Cr.App.1973); *Duran v. State*, 505 S.W.2d 863 (Tex.Cr.App.1974); *Pete v. State*, 501 S.W.2d 683 (Tex.Cr.App.1973).

■ The adequacy of an attorney's services must be gauged by the totality of the representation, *Williams v. State*, 513 S.W.2d 54 (Tex.Cr.App.1974); *Coble v. State*, 501 S.W.2d 344 (Tex.Cr.App.1973). See also *Murphee v. State*, 500 S.W.2d 165 (Tex.Cr.App.1973); *Lewis v. State*, 504 S.W.2d 900 (Tex.Cr.App.1974); *Duran v. State*, supra, and the allegations of ineffective representations will be sustained only if they are firmly founded. *Faz v. State*, 510 S.W.2d 922 (Tex.Cr.App.1974); *Long v. State*, 502 S.W.2d 139 (Tex.Cr.App.1973).

■ An attorney must appraise a case and do the best he can with the facts and the fact that other counsel might have tried the case differently does not show inadequate representation. See *Rockwood v. State*, 524 S.W.2d 292 (Tex.Cr.App.1975); *Witt v. State*, 475 S.W.2d 259 (Tex.Cr.App.1971); *Carter v. State*, 449 S.W.2d 70 (Tex.Cr.App.1969). See also *United States v. Rodriguez*, 498 F.2d 302 (5th Cir. 1974).

The test to be applied in determining whether counsel has provided constitutionally effective assistance is the "reasonably effective assistance" standard. See *Ex parte Gallegos*, supra.

In the instant case petitioner's appointed counsel had 36 years of experience at the time of the guilty pleas. At the time of appointment he was confronted with a client who had already indicated he wanted to plead guilty. He was given the State's file and from the record went over it with the petitioner, who continued to plead guilty and who told the court he was guilty and then made a judicial confession. It is undisputed that appellant came to Texas with his three companions, had participated in a burglary with them, and was at the scene of the robbery and subsequently the rape. The file revealed that two men, possibly three, were seen at the robbery, and when the car was later stopped Houk and Morris were in the rear seat, Justis was driving and the petitioner was in the front passenger seat and was seen to throw money and a knife out the window. At the habeas corpus hearing appointed counsel could not recall his conversations with the petitioner over four years before other than reflected by the interrogation at the time of the guilty pleas. He did recall that petitioner gave him no indication that he was unconscious at the time of the robbery or rape. Petitioner could not recall that he told counsel of his condition, but assumed it was in the statements, etc., which it was not. Counsel clearly offered to try the case before a jury, but petitioner declined. If counsel had talked to the witnesses he would have learned from the prosecutrix that petitioner was told to go back to sleep, but would have learned also petitioner was alert enough to get from the back to the front seat under his own power when told to do so. From the officers he would have found support for the statement in the offense reports that the front seat passenger threw money and a knife from the car when they were being stopped.

■ While it is true that mere presence alone will not constitute one a principal, see 2 Branch's Anno.P.C., 2d ed., Sec. 709, p. 6; 16 Tex.Jur.2d, Sec. 58; *Childress v. State*, 465 S.W.2d 947 (Tex.Cr.App.1971), nevertheless it is a circumstance tending to prove that a person is a principal, and taken with other facts may be sufficient to show that he was a participant. *Childress v. State*, supra; *Coronado v. State*, 508 S.W.2d 373 (Tex.Cr.App.1974).

■ In determining whether a party was participating as a principal the courts may look to events before, during and after the commission of the offense. *Bush v. State*, 506 S.W.2d 603 (Tex.Cr.App.1974); *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App.1975).

"An agreement of parties to act together in a common design can seldom be proved by words, but reliance can often be had on the actions of the parties showing an understanding and a common design to do a certain act." 16 Tex.Jur.2d, Sec. 58, p. 171.

*Bush v. State,* supra; *Holloway v. State,* supra. Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence is sufficient to show that one is a principal. *Westfall v. State,* 375 S.W.2d 911 (Tex.Cr.App.1964).

It should be remembered that one can be a principal when he advises or agrees to the commission of the offense and is present when the same is committed, whether he aids in the commission of the offense or not. *Bush v. State,* supra; *Middleton v. State,* 86 Tex.Cr.R. 307, 217 S.W. 1046 (1920).

From the totality of the circumstances, we cannot conclude that appellant was denied the effective assistance of counsel.

The relief prayed for is denied.