Linda Gay WYGAL alias Lynda Hoke, Appellant,

v.

The STATE of Texas, Appellee.

No. 54812.

Court of Criminal Appeals of Texas.

Sept. 14, 1977.

Frank P. Smarzik, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and R. P. Skip Cornelius, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation.

On February 24, 1975 appellant entered a plea of guilty before the court to theft of a credit card. On March 14, 1975 the court assessed punishment at ten (10) years in the Department of Corrections and at a fine of $500.00. The imposition of the sentence was suspended and the appellant was placed on probation subject to certain probationary conditions, including the requirement of "abiding by and not violating the laws of this state or of any other state or of the United States."

On May 24, 1976 the State filed a motion to revoke probation, alleging the appellant violated the foregoing condition of probation in

"That Lynda Wygal alias Lynda Gay Hoke, on or about April 1, 1976, in Harris County, Texas, did then and there unlawfully appropriate property, namely, one automobile, of the value of over two hundred dollars and under ten thousand dollars, with the intent to deprive the owner, Tim Evans, of the property. And in the County of Harris and State of Texas, one Lynda Wygal alias Lynda Gay Hoke, hereinafter referred to as the Defendant, heretofore on or about April 2, 1976, did then and there unlawfully appropriate property, namely one automobile, of the value of over two hundred dollars and under ten thousand dollars, with the intent to deprive the owner, Ben Dwoskin, of the property. And all of said amounts were obtained, as alleged, in one scheme and continuing course of conduct, and the aggregate amount of the amounts stolen was over ten thousand dollars."

On June 18, 1976 the court, after a hearing on said motion, revoked probation upon a finding that appellant had unlawfully appropriated the automobile of Ben Dwoskin. The punishment originally assessed was then reduced from ten years to seven years.

On appeal appellant complains the court abused its discretion in revoking probation since the evidence was insufficient to show the appellant had violated the condition of probation as alleged.

John Kelleher, Special Agent, F.B.I., testified that on April 1, 1976 he and Agent Blankenbueller, while conducting an investigation into stolen cars, set up a surveillance of the parking lot of Liberty Savings Association at Westheimer and Montrose Avenues in Houston. He had received information that stolen cars might be left on such parking lot. He observed one car there which fit the general description given, and then saw a yellow Dodge Charger being parked on the lot. The lone male driver got out and walked towards Westheimer and crossed the street and got into the passenger side of a little red sports car, which pulled away immediately. Kelleher could not see who was driving the car, whether male or female, and was unable to determine how many people were in the car. He thought the car was either a Toyota or a Mazda and believed the license number was GCN 854. He later checked and discovered that the Yellow Dodge Charger was stolen. He turned his information over to the Houston Police Department.

Detective W. C. Robertson of the Houston Police Department set up a surveillance at the Liberty Savings parking lot on April 2, 1976 after receiving information from the F.B.I. and after two stolen Dodge automobiles had been recovered from that lot on April 1, 1976. He also had the description and license number of a stolen 1976 Continental Mark IV automobile. During the surveillance, he observed one Jerry Thurman drive the described Mark IV onto the parking lot and leave it there. He observed Thurman cross to the north side of Westheimer and walk east. He then saw a red Mazda located on the Prince Drive-In's parking lot pull forward and saw Thurman get in the passenger side. Robertson then followed the red Mazda, license number GCN 954,[1] west on Westheimer for several

---

1. The license number is at variance with that given by Kelleher but Robertson said GCN 954 was the license number given by the F.B.I.

blocks and then stopped the car. Appellant was the driver and Thurman was the passenger. They were arrested.[2] He acknowledged that anyone on the Prince Drive-In parking lot could not see or observe the parking lot of Liberty Savings because the savings association building was three to four stories high, blocking all view.

Ben Dwoskin, credit manager for Southwest Lincoln-Mercury, stated the Mark IV automobile in question, described by license number and serial number, had been stolen from his company on April 1 or 2, 1976, that it had been in his care, custody and control, and he had given no one permission to take the same. He did not know who had stolen the car.

Officer D. J. Miller was present at the time of appellant's arrest and, without objection, testified that the appellant stated she had called her house and that Jerry Thurman was there and asked her to pick him up at the Prince Drive-In on Westheimer and she did. Miller stated appellant confirmed a false address given by Thurman, but it was learned she lived at apartment 13 at 909 Silber rented to Johnny Wygal, her husband, and that Thurman stayed there. Officer Miller had determined that the red Mazda was registered to a Reggie Neville.

Tommy Vaseil, a mechanic at Sharpstown Dodge, testified that Tim Evans (complaining witness in the first count of the motion), his boss and service manager, was on vacation, but he knew a Dodge car was taken on March 31 or April 1, 1976, but he couldn't state the exact model. He saw a man walk to the area where the cars were parked, heard a door slam and the car was driven off. Vaseil stated he had picked out a photograph of a man from those shown him by police, but he didn't know the man's name. When Thurman was brought into the courtroom, Vaseil could not recognize him. He stated he had never seen the appellant before.

James Lamberth was called by the appellant. He testified he lived in the same apartment complex as the appellant and that on April 2, 1976 he saw a 1976 Lincoln Continental Mark IV parked in his driveway and Jerry Thurman was standing by it. He stated that the appellant telephoned and asked to speak to Jerry, who was called to the phone. Lamberth knew appellant had no telephone in her apartment, and she often used his. He stated Jerry left in the car after the conversation. He had met Jerry at appellant's apartment where Jerry stayed "off and on." He related that the appellant had a Chevrolet but often drove a red Mazda owned by one Reggie who visited at the appellant's apartment. Her husband, as far as he knew, lived in Fort Worth.

Georgia Castro testified for the defense. She lived at the same apartment complex as the appellant and was often a babysitter for appellant's child. She related the apartment manager asked her about three cars that were parked at the complex, and on a date she believed to be April 1, 1976, she saw Jerry Thurman drive off in a yellow Dodge Charger, a curly haired man drive off in a red Mazda and another man she had never seen before drive off in a third car (sometimes referred to in the record as a blue Dodge Dart). She stated she did not see the appellant that day, and never did see her around the cars she was observing.

Jerry Thurman testified that on April 1, 1976 he had driven the yellow Charger from the apartment complex at 909 Silber to the Liberty Savings parking lot, that a man named Ron drove the blue Dodge, and Reggie Neville drove his red Mazda and picked them up near the parking lot. He stated appellant was not with them and had no knowledge of the transaction. He related that on April 2, 1976 he was ready to leave the apartment complex in the Mark IV automobile planning to take a taxi cab back to the apartment when Lamberth called him to the phone. It was the appellant, who stated she was near the Gulf Freeway

---

2. Robertson testified the district attorney's office would not at first accept charges against the appellant because of insufficient evidence.

and wanted to know if he needed her to pick up any bread, meat, etc. He then asked her to pick him up at the Prince Drive-In on Westheimer. Thurman then acknowledged he drove the Mark IV to the parking lot of Liberty Savings and walked to the drive-in where he met the appellant, who was driving the red Mazda. He stated appellant knew nothing about the Mark IV automobile.

He acknowledged he stayed "off and on" at appellant's apartment during the month of March, 1976 and said the address he gave the police upon his arrest was where he actually lived until a few days before his arrest. He stated at the time of arrest he was unemployed and had borrowed money from a friend. Thurman would not admit stealing the cars, but acknowledged he took the yellow Dodge and the Mark IV to the Liberty Savings parking lot.

This then is the evidence upon which we must decide the question before us. The court revoked probation only upon the second count of the revocation motion. Ben Dwoskin testified he had no knowledge of who took the Mark IV automobile on April 1st or 2nd of 1976. Thurman was seen in possession of the Mark IV on the morning of April 2nd at the apartment complex, but appellant was not seen near the automobile. Thurman admitted he asked appellant when she telephoned to meet him at the Prince Drive-In and that he drove the Mark IV to the savings association parking lot and then walked to the Prince Drive-In to meet appellant, who he said knew nothing of the transaction. Officer Robertson admitted that an individual on the Prince Drive-In's parking lot had no view of the parking lot of the Liberty Savings Association because of the height of the building. There is nothing in the evidence to show that the appellant participated in any way in the taking of the yellow Dodge or other cars or in placing them on the parking lot of Liberty Savings Association on April 1, 1976 or at any other time.

Clearly the evidence is insufficient to show that appellant acting alone had committed the theft of the Mark IV automo-

bile. We turn next to the question of whether she was a party to the crime.

V.T.C.A., Penal Code, § 7.01, provides: "(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"(b) Each party to an offense may be charged with commission of the offense.

"(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."

V.T.C.A., Penal Code, § 7.02, provides: "(a) A person is criminally responsible for an offense committed by the conduct of another if:

"(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

"(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

If appellant was a party to the crime, it would be by virtue of § 7.02(a)(2), supra.

In determining whether an individual is a party to an offense and bears crimi-

nal responsibility therefor, the court may look to events before, during and after the commission of the offense. *Ex parte Prior,* 540 S.W.2d 723, 727 (Tex.Cr.App.1976); *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr. App.1975); *Bush v. State,* 506 S.W.2d 603 (Tex.Cr.App.1974).

"An agreement of parties to act together in a common design can seldom be proved by words, but reliance can often be had on the actions of the parties showing an understanding and a common design to do a certain act. . . ." 16 Tex.Jur.2d, § 58, p. 171.

▇ Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. Circumstantial evidence may be sufficient to show that one is a party to the offense. *Ex parte Prior,* supra; *Westfall v. State,* 375 S.W.2d 911 (Tex.Cr.App.1964).

▇ Ben Dwoskin, the complaining witness, did not know who had taken the Mark IV automobile on April 1st or 2nd. There was no evidence to place the appellant at the scene of the offense.[3] Thurman alone was in possession of the car on the morning of April 2nd. Appellant was not with him. As in *Suff v. State,* 531 S.W.2d 814 (Tex.Cr.App.1976), the record is silent as to any direct burden of any common purpose or design. She did pick Thurman up at the Prince Drive-In at his request, but as Officer Robertson testified, she could not observe the Liberty Savings parking lot or Thurman's activities there because the view was blocked by the building. Thurman did live at appellant's apartment and when arrested he gave his former address, which she confirmed. The question is whether these circumstances are sufficient to show that appellant was a party to the offense. We conclude they are not sufficient to show she acted with intent to promote or assist the commission of the offense, by soliciting, encouraging, directing, aiding, or attempting to aid another person to commit the offense. Her act of picking up Thurman at the Prince Drive-In and confirming the false address given by Thurman came after the offense had been completed.

▇ It is true that the majority has held that the State's burden of proof in revocation proceedings is by a preponderance of the evidence, *Scamardo v. State,* 517 S.W.2d 293 (Tex.Cr.App.1974), but it was made clear the trial judge is not accorded absolute discretion in the decision to revoke probation.

In *Reed v. State,* 533 S.W.2d 35 (Tex.Cr. App.1976), the court stated:

". . . The fact that this Court has held that the standard of proof that the State must meet in proving offenses upon which the State relies in revocation of probation proceedings is by a preponderance of the evidence rather than beyond a reasonable doubt does not relieve the State of the burden of proving every element of the offense. . . ."

Likewise, we hold that the burden of proof adopted in *Scamardo* does not relieve the State of the burden of proving the appellant was a party to the offense. This the State did not do.

Since appellant's acts came after the completion of the theft, we observe that under the former Penal Code an accessory (after the fact) was defined in Article 77, Vernon's Ann.P.C., 1925, as follows:

"An accessory is one who, knowing that an offense has been committed, conceals the offender, or gives him any other aid in order that he may evade an arrest or trial or the execution of his sentence. One who aids an offender in making or preparing his defense at law, or procures him to be bailed though he afterwards escape, is not an accessory."

---

3. Mere presence alone will not constitute one a party to the offense. *Ex parte Prior,* supra; *Johnson v. State,* 537 S.W.2d 16 (Tex.Cr.App. 1976); *Childress v. State,* 465 S.W.2d 947 (Tex. Cr.App.1971). Nevertheless, it is a circumstance tending to prove that a person is a party to the offense and when taken with other facts may be sufficient to show that he was a participant. *Ex parte Prior,* supra; *Johnson v. State,* supra; *Coronado v. State,* 508 S.W.2d 373 (Tex.Cr.App.1974).

**470**

In *Easter v. State*, 536 S.W.2d 223, 228 (Tex.Cr.App.1976), the court noted the 1974 Penal Code made some notable changes with regard to parties to a crime as the distinction between a principal and an accomplice (to the crime) was abolished and an accessory (after the fact) was abolished as a party to a crime. There the court wrote:

"It clearly follows from what has been said that an accessory is no longer recognized in Texas as a party to the crime with which the accused is charged and cannot be convicted of the same. If chargeable at all, it would appear to be under said Section 38.05, which creates a separate and distinct offense. . . ."

V.T.C.A., Penal Code, § 38.05, provides:

"(a) A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense, if he:

"(1) harbors or conceals the other;

"(2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or

"(3) warns the other of impending discovery or apprehension.

"(b) It is a defense to prosecution under Subsection (a)(3) of this section that the warning was given in connection with an effort to bring another into compliance with the law.

"(c) An offense under this section is a Class A misdemeanor."

█ We cannot conclude that appellant, under the circumstances, was even guilty under said § 38.05, which was not charged in the revocation motion.

The judgment is reversed and the cause remanded.