**John WILLABY & David Breding, Appellants,**

v.

**The STATE of Texas, State.**

**Nos. 2–85–060–CR, 2–85–061–CR.**

Court of Appeals of Texas, Fort Worth.

Oct. 16, 1985.

Guy W. Rucker, Addison, for appellants.

Russell P. Brooks, County Atty., and Sam R. Hicks, Asst., Greenville, for appellee.

Before FENDER, C.J., and BURDOCK and HOPKINS, JJ.

**OPINION**

BURDOCK, Justice.

Appellants, John Willaby and David Breding, were convicted in Justice Court of the offense of illegal fishing by the use of a hand-operated device under water designed to snag fish. Appellants appealed and received a trial de novo in the County Court of Hunt County. On November 9, 1984, the County Court sitting without a jury found the appellants guilty of the same charge and assessed each appellant a fine of $118.50.

We affirm.

Appellants advance five grounds of error on appeal. The conviction below is attacked on the bases that:

(1) the evidence was insufficient to sustain a conviction;

(2) there is no statute in effect that would permit a conviction of the offense charged;

(3) the proper chain of custody was not used to preserve the physical evidence;

(4) the appellants were charged in a justice of peace precinct that did not have jurisdiction; and

(5) the statute upon which the convictions were based was too vague to be enforceable.

In appellants' first ground of error it is alleged that the evidence was insufficient to sustain a conviction of one of the appellants, David Breding. We disagree.

The evidence shows that on the early morning of June 24, 1984, Kendall Kyle Kinslow was fishing at Lake Tawakoni in Hunt County, at a place locally known as "the levee." Kinslow observed appellants and another man leave their pickup and walk past him carrying a "noodling pole",[1] a lantern and a dip net to the water. Kinslow then got in his pickup and called Glenn Mitchell, the game warden.

Charlie Brown testified that he was fishing near Kinslow when he saw John Willa-

---

1. Kinslow described the noodling pole as a short stick or pole or chain with a hook on the end of it that can be used to slide up under a rock and snag fish.

by wading in the water, with the "noodling pole" under the water and among the rocks. Brown saw Willaby hook a catfish and Breding collect the fish in the dip net.

Officer Glenn Mitchell met Kinslow at the levee. The officer observed the appellants in the water from a concealed spot behind some trees. From this location he could see Willaby working around the rocks with water up to his shoulders, appellant Breding standing in waist deep water holding a dip net and a third person standing in shallow water drinking beer. The area was well-lighted by a lantern. After observing the appellants for twenty minutes, Officer Mitchell arrested all three men as they were leaving the water and beginning to walk to their truck. Willaby was carrying the noodling pole and Breding had the dip net containing a catfish. Officer Mitchell then took charge of the noodling pole, dip net and catfish, which were stored at his home until the trial when they were admitted into evidence.

The offense of using a device under water, as it read at the time of the offense, is fully set forth as follows:

(c) It is unlawful to use a hand-operated device under water designed to snag fish, commonly called "noodling," poles or gaffs other than the ones permitted under Texas Parks and Wildlife Code secs. 66.101, 66.102, and 66.107.

Tex.Parks & Wildlife Comm'n, 31 TEX.ADMIN.CODE sec. 65.63(c) (Shepard's May 1, 1982) (Freshwater Fish: Means and Methods).

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the judgment (where the trial court acts as the trier of fact). *See Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex. Crim.App.1984); *Wilson v. State,* 654

S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on rehearing).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied,* — U.S. —, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

In the case at hand, the evidence is sufficient to support both appellants' convictions. A defendant is guilty as a party where he (1) is physically present at the commission of the offense and (2) encourages the commission of the offense either by words or other agreement. *Baldridge v. State,* 543 S.W.2d 639, 643 (Tex. Crim.App.1976); *Suff v. State,* 531 S.W.2d 814, 817 (Tex.Crim.App.1976); *Bush v. State,* 506 S.W.2d 603, 605 (Tex.Crim.App. 1974). In determining whether one has participated as a party, the trial court may look to events occurring before, during and after the commission of the offense and reliance may be placed on actions of the parties which show an understanding and common design to do a certain act. *Ex parte Prior,* 540 S.W.2d 723, 727 (Tex. Crim.App.1976); *Holloway v. State,* 525 S.W.2d 165, 167 (Tex.Crim.App.1975); *Bush v. State,* 506 S.W.2d at 605.

Breding's presence at the commission of the offense is undisputed. Witnesses testified that Breding carried the dip net into the water as Willaby carried the noodling pole. Breding was seen using the dip net to land a catfish hooked by Willaby. Both appellants arrived at and attempted to leave the lake together with the evidence. Appellants' first ground of error is overruled.

In appellants' second ground of error, they argue that there was no explicit law in effect at the time of the alleged violation

giving rise to their being charged with and found guilty of "us[ing] a hand-operated device under water designed to snag fish." 31 TEX.ADMIN.CODE sec. 65.63(c). They argue that the fishing device in question is legal under sec. 65.63(a) which, at the time of the offense read, in pertinent part:

(a) In regulatory counties, only the following means and methods may be used to take fish. It is unlawful to take or attempt to take fish by any means and methods, except as specifically allowed in this section.

(1) Pole and line, ...

*Id.* Appellants claim that the specific allowance of the use of a "pole and line" in sec. (a) conflicts with the prohibition in sec. (c) of the same statute against the use of: a hand-operated device under water designed to snag fish, commonly called "noodling," poles, or gaffs other than the ones permitted under Texas Parks and Wildlife Code secs. 66.101, 66.102, and 66.107.

*Id,* with which they were charged and convicted. Appellants note that sec. 66.101 (Uniform Wildlife Regulatory Act, ch. 730, sec. 2, 1967 Tex.Gen.Laws 1959, 1960, *repealed by* Act of March 17, 1983, ch. 9, sec. 36, 1983 Tex.Gen.Laws 22, 31) of the Texas Parks and Wildlife Code, to which sec. (c) of the Statewide Hunting and Fishing Proclamation refers, was repealed, effective September 28, 1983. They seem to reason that since sec. 65.63(c) of the Commission's Proclamation was effective at the time of their offense, and, since it referred to a repealed section of the Texas Parks & Wildlife Code, that the repealed section remained effective as a "definition". Based upon such reasoning, appellants conclude that sec. 66.101 of the Code conflicts with Proclamation sec. 65.63(c)'s prohibition against "noodling" in that it specifically allows the use of an "ordinary hook and line...."

In the same point of error, appellants further contend that Hunt County, as a "regulatory county" under Code sec. 65.63(a), is required to but has failed to adopt these regulations in order to make sec. 65.63 effective, thereby leaving Hunt County with no fishing regulations.

We first note that appellants' second ground of error is multifarious and does not comply with TEX.CODE CRIM. PROC.ANN. art. 40.09(9) (Vernon Supp. 1985), which requires appellant briefs to "set forth separately each ground of error of which the appellant desires to complain on appeal...." *Id.* By combining more than one contention in a single ground of error, appellants risk rejection of the ground as multifarious and present nothing for review. *Brooks v. State,* 642 S.W.2d 791, 793 (Tex.Crim.App.1982). Notwithstanding the fact that appellants' second ground of error is multifarious, if the Court of Appeals can identify and understand the various contentions, the same should be considered and addressed. *Ben-Schoter v. State,* 638 S.W.2d 902, 903 (Tex. Crim.App.1982).

Moreover, appellants' brief cites no authority for its propositions nor does it give record references. While such a brief presents nothing for review, we will consider each of appellants' contentions for the sake of justice. *Williams v. State,* 580 S.W.2d 361, 362 (Tex.Crim.App.1979).

It is presumed in construing statutes that several acts or provisions relating to the same subject were intended to be consistent and to operate in harmony. *Credit Exchange of Dallas Inc. v. Bell,* 427 S.W.2d 674, 676 (Tex.Civ.App.—Dallas 1968, no writ). The Legislature is presumed to have used words in a statute in the sense in which they are ordinarily understood. *Calvert v. Austin Laundry & Dry Cleaning Co., Inc.,* 365 S.W.2d 232, 235 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.) An amendment will be construed and harmonized with the act that it amends or to which it is added, and of which it forms a part. *Consumers' Gas & Fuel Co. v. Erwin,* 243 S.W. 500, 503 (Tex.Civ.App. —Fort Worth 1922, writ ref'd).

By enacting secs. 65.63(a) and (c), the Texas Parks and Wildlife Commission, under the authority granted it by the Leg-

islature in TEX.PARKS & WILD.CODE ANN. sec. 61.054 (Vernon Supp.1985), specifies the means and methods of fishing allowed by law. Section (a) allows the use of a pole and line, while sec. (c) prohibits the use of a hand-operated device under water to snag fish. Presuming that the Commission intended these provisions to be consistent with each other, and taking the words in their common, ordinary meanings, we read these provisions as allowing fishing with ordinary fishing poles, but not allowing any device used under water to snag fish. We can find no conflict between these two provisions.

■■■ Neither do we find a conflict between sec. (c) and repealed secs. 66.101 and 66.107, to which the former refers. In order to harmonize the repeal and the reference in sec. (c) to these repealed sections, sec. 65.63(c) must be read as fully effective but for the reference to the repealed sections. It is clear to this court that such a reference does not revive an otherwise repealed statute, but is merely read disregarding the now erroneous reference.

In further support of our position, we would point out that this section has recently been amended by the Commission so that it no longer refers to the repealed sections. Section 65.63(c), effective September, 1984, now reads:

(c) It is unlawful to use a hand-operated device under water to snag fish.

Tex.Parks & Wildlife Comm'n, 9 Tex.Reg. 3825, 3826 (1984) (amending 31 TEX.AD-MIN.CODE sec. 65.63(c)) (Shepard's May 01, 1982). While this amendment did not become effective until September 1984, some two months after appellants' offense occurred, it nevertheless manifests the intent of the Legislature to harmonize the section with the repealed statutes.

■■■ Appellants next argue that Hunt County is without fishing regulations due to its failure to adopt the Commission regulations. A reading of the applicable statutes clearly shows that Hunt County is a "regulatory county" under sec. 65.63 and as such, is subject to the Commission's regulations.

The Parks and Wildlife Code of Vernon's Texas Statutes Annotated, is composed of seven titles, of which Title 2 creates the Parks and Wildlife Department, its governing Commission and its powers and duties concerning wildlife. Chapter 61 of the Code is the Wildlife Conservation Act of 1983. Applicability of the Act to counties, places and wildlife resources occurs through a legislative enactment of prescriptions in Title 7 of the Code. Thus, sec. 216.001 of Title 7 states: "Except as provided in this chapter, the Wildlife Conservation Act of 1983 applies to the wildlife resources in Hunt County." TEX.PARKS & WILD.CODE ANN. sec. 216.001 (Vernon Supp.1985) (effective Aug. 29, 1983).

The Legislature, by statute, delegated the authority to the Parks and Wildlife Commission to regulate the times during, and the manners in which, it is lawful to take wildlife resources. See id. secs. 61.-021, 61.022, 61.052 and 61.054. It was pursuant to this legislative scheme that the Parks and Wildlife Commission issued the 1983–84 Statewide Hunting and Fishing Proclamation sec. 65.63(c). We find that this proclamation, under which appellants were charged and convicted, is applicable to Hunt County for the reasons stated above. See McDonald v. State, 615 S.W.2d 214 (Tex.Crim.App.1981). Appellants' ground of error two is overruled.

Appellant's third ground of error concerns the admission into evidence of the noodling pole, dip net and catfish seized from appellants at the time of their arrest.

■■■ A reading of the record reflects that no objection was registered with the court at the time the dip net was offered into evidence. Absent an objection to the admission of evidence nothing is presented for review. Crocker v. State, 573 S.W.2d 190, 205 (Tex.Crim.App.1978). Appellants' complaint to the admission into evidence of the dip net is overruled.

Officer Mitchell testified that he placed the noodling pole in the attic of his home upon the arrest of the appellants. Although the pole was not placed under lock

and key, only the officer and his wife had access to the attic.

Officer Mitchell testified he seized the catfish from Breding at the time of his arrest. The officer testified he immediately placed the catfish in Willaby's ice chest until he arrived at his home, wherein he tagged the fish, placed it in a sack and then placed the sack in the freezer in his garage. The garage was attached to the house and both doors were locked when Officer Mitchell and his wife were not in the garage. The fish was removed from the freezer and the pole removed from the attic only to be used as evidence in the Justice Court and this trial.

The objection at the trial court carried forward on appeal is that the chain of custody to both the pole and the catfish was unproven because the exhibits were unattended, unsupervised and not kept under lock and key.

■■■ The objection made by appellants at trial went to the weight rather than the admissibility of the evidence. *Wright v. State*, 420 S.W.2d 411, 413 (Tex.Crim.App. 1967). The exhibits were sufficiently identified by the witness and there was no showing that the exhibits had been tampered with or changed in any manner. As stated in *Boss v. State*, 489 S.W.2d 582, 584 (Tex.Crim.App.1973):

> It is not necessary that an object or article which is offered in evidence should be in precisely the same condition at the moment of its offer as it is at the time when it played a part in the occurrence which gave rise to its offer in evidence, but the change in its condition must not have been wrought for unjustifiable purposes, and it must not be of sufficient moment that the exhibit will mislead. 29 American Jurisprudence, Section 774, page 845.

*Id.* We hold that the evidence was sufficiently secured for its introduction. Appellants' third ground of error is overruled.

In their fourth ground of error, appellants claim that they were improperly charged and tried in a Justice of the Peace Court that did not have jurisdiction. They claim that Defendants' Exhibit One clearly shows that the alleged violation occurred in Justice Precinct # 4, whereas they were tried in Precinct # 1. The exhibit referred to is a map of Hunt County, Texas, showing Lake Tawakoni, the different Justice of Peace precinct lines and where the offense occurred.

TEX.CODE CRIM.PROC.ANN. art. 4.11 (Vernon 1977) states that:

> Justices of the peace shall have jurisdiction in criminal cases where the fine to be imposed by law may not exceed two hundred dollars.

*Id.*

TEX.PARKS & WILD.CODE ANN. sec. 61.901(a) (Vernon Supp.1985) states that:

> (a) A person who violates any provision of this chapter or any proclamation or regulation of the commission ... is guilty of a misdemeanor and on conviction is punishable by a fine of not less than $25 nor more than $200.

*Id.*

■■■ Accordingly, Justice Peters of Justice Precinct # 1 had jurisdiction to hear and render judgment in appellants' misdemeanor case since it involved a fine of less than $200.00. If appellants are arguing that *venue* did not properly lie in Justice Peters' court, then TEX.CODE CRIM. PROC.ANN. art. 4.12 (Vernon 1977) applies. Article 4.12 provides:

> A misdemeanor case to be tried in justice court shall be tried in the precinct in which the offense was committed, or in which the defendant or any of the defendants reside, or, with the written consent of the State and each defendant or his attorney, in any other precinct within the county; ...

*Id.* However, venue not timely objected to is thereby waived. *Clark v. State*, 558 S.W.2d 887, 891 (Tex.Crim.App.1977).

■■ There was no record on appeal of what happened at the justice court level, but a record was made of appellants' trial de novo in the county court, and it does not reflect any objections by appellants to ven-

ue until their motion for rehearing. Even though appellants waived their objection to venue, we find that they failed to meet their burden of proof. During their motion for rehearing, appellants failed to prove that Justice Peters' court did not have proper venue over offenses occurring in Lake Tawakoni. The State presented evidence in the form of testimony from Justice Peters that offenses occurring in the lake came within her precinct. Appellants failed to contravene this testimony with any probative evidence.

■■■ Moreover, at the county court level, the State properly established venue by proving that the offense occurred within Hunt County, Texas. *See Klingbeil v. State,* 659 S.W.2d 98 (Tex.App.—Houston [14th Dist.] 1983, no pet.). In all appeals from justice courts to the county court, the trial shall be de novo in the trial in the county court, the same as if the prosecution had been originally commenced in that court. TEX.CODE CRIM.PROC.ANN. art. 44.17 (Vernon 1979). We find that appellants failed to prove that venue was not proper in Justice Precinct #1, that they waived any objection thereto, and that in any event, venue was proper at the county court level. Appellants' fourth ground of error is overruled.

In their fifth ground of error appellants complain that the regulation upon which their convictions were based was too vague to be enforceable because the appellants had baited the hook with an artificial lure. We disagree.

As stated earlier, appellants were convicted of using a hand-operated device under water designed to snag fish as set forth in 31 TEX.ADMIN.CODE sec. 65.-63(c) and not of the offense of snagging fish as set forth in sec. 65.63(b) of the same Code. Section (c) does not address the issue of whether the hook was baited or whether an artificial lure was used as set forth in sec. (b) of the same Code.

■■■ Despite this, appellants suggest that the hook was baited with rubber worms and thus Willaby invented a new kind of fishing which is not prohibited by state law. Willaby's claim is not borne out by the evidence. Willaby claimed his new fishing method was to thread the end of the worm onto the barbs of the treble hook in a manner so that the barbs would be covered and the end of the worm would be dangling in front of any fish that would be in the rocks around the levee. Willaby denied that the hook could be used to snag any fish. Willaby admitted there was no worm on the hook at the time of his arrest and to use this new method of fishing it would be necessary to hold the whole device under water. We reject Willaby's contention that there was no law in effect to prohibit his new method of fishing. Without further discussion of the issue of an artificial lure, we find that secs. (b) and (c) are separate methods to illegally catch fish and that Willaby's admission that the entire device, baited or unbaited, must be held under water, will sustain a conviction for violation of 31 TEX.ADMIN.CODE sec. 65.63(c). Appellant's fifth ground of error is overruled.

The judgment is affirmed.