Opinion issued October 6, 2011.

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-10-00905-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



DEVAN CURTIS MEEKS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 344th District Court

 Chambers
County, Texas

Trial Court Cause No. 14969

 

 



MEMORANDUM OPINION

          A
jury convicted Devan Curtis Meeks of murder, and the trial court assessed his
punishment at sixty years’ confinement.  See Tex.
Penal Code Ann. § 19.02(b) (West 2003). 
On appeal, Meeks contends the evidence is insufficient to support his
conviction.  We affirm.   

Background

In the summer
of 2008, Meeks, then nineteen years old, was dating Melina Perry, then age
sixteen.  That summer, Perry moved into
David Davis’s house.  Perry’s father had
died two years earlier, and Davis had been Perry’s father’s best friend.  Davis had agreed to care for Perry because
her grandmother could not control Perry’s behavior.  Meeks also lived at Davis’s house for a
period that summer, but Davis evicted him because Meeks refused to find a
job.  Davis believed that Perry was too
young to date Meeks.  He contemplated
calling the police about their relationship. 
As a result, Davis and Meeks did not get along with each other.  On numerous occasions, Meeks had threatened
to kill Davis.  

In a letter
dated July 1, 2008, Perry wrote: 

Can I live wit[h] this for
the rest of my life?? Is [Meeks] the only one who knows about it, always going
to stick wit[h] me and be [with] me forever? 
Should I have told him??  Can I
just slit [Davis’s] throat and walk away?? 
Yes to all of those.  [H]onestly I
am a cold hearted person.  I think that I
really can just walk up to him and slit his throat[,] watch him bleed to death[,]
turn around and walk out of the house and run to my baby’s arms and yeah I’ll
probably cry about it [for] a [little] while but hey life goes on right.  [H]e deserves to die . . . . [Davis] is a
horrible person[,] and he is trying to ruin everything  I have going [for] me and [Meeks].  [H]e is trying to put [statutory] rape
charges on the person I want to spend [for]ever wit[h] . . . .  So either tonight while he is [sitting] in
his chair or tonight in his bed I will close his eyes [for] him for[ever].  RIP [D]avid [D]avis . . . .  David [D]avis is a walking dead man. 

 

Four days after Perry wrote the
letter, Meeks attacked Davis and choked him. 
Meeks stopped when Perry fled the scene. 
Davis called the police from a neighbor’s house.  A friend then picked up Meeks and Perry and
drove them to Meeks’s grandfather’s house. 
Once there, Meeks stole his grandfather’s truck.  According to the friend, Meeks took the truck
because he and Perry intended to “get away from everyone.”  

          In
the early morning hours of the following day, Meeks and Perry drove to Davis’s
house.  Perry entered the house and then
returned outside to Meeks to tell him that Davis was awake.  She told Meeks that it was time to kill
Davis, and she urged him inside the house. 
But Davis then came outside, brandishing a hedge clipper.  Meeks blocked it with the handle of a near-by
shovel.  Meeks and Davis exchanged
punches on the steps to the house. 
According to Meeks, while he fought Davis, Perry repeatedly stabbed
Davis in the back with a pocket knife. 
In an attempt to get away from Meeks and Perry, Davis stumbled into the
house.  Meeks admitted to the police that
he then “knocked [Davis] out cold on the living room floor,”  but he later recanted stating that he did not
knock Davis out, and only knocked Davis backward when he approached him with
the hedge clipper.   According to Meeks,
once Davis was inside the house, Perry retrieved a knife from the kitchen and
cut Davis’s throat.  She also stabbed
Davis countless times in the chest, including in the heart.  The blade of the knife broke off inside of
Davis’s body.  Meeks told police that
Perry also hit Davis three times in the head with the hedge clipper.  

Davis
died. Meeks then collected all the weapons he could find, including the hedge
clipper and some knives.  He wrapped the
weapons in a shirt and placed them in his truck, along with Perry’s
clothing.  In addition, Meeks stole one
of Davis’s dresser drawers because it contained marijuana.  According to Meeks, Perry grabbed a gas canister,
splashed gasoline around the house, and started a fire with Meeks’s lighter.  Perry placed the gas canister in the back of
the truck.  Meeks and Perry fled to
Meeks’s father’s house in Oklahoma.  On
the way, Meeks threw the weapons and shirt into the woods somewhere off the
highway.  

The
police apprehended Perry and Meeks shortly after they arrived in Oklahoma.  Upon his arrest, Meeks told Perry, “Baby,
please don’t say anything for me.”  He
told the police that he never stabbed Davis, did not plan to kill Davis that
night, and protested when Perry said it was time to kill him.  The police found blood on the steering wheel
of the truck, the driver’s seat, and the gas canister.  The police also found a pocket knife on the
front porch of Davis’s house.  The knife
appeared to be one that Meeks had carried with him, but Meeks told the police
that he had lost his knife before Davis’s death at a friend’s house.

          Thomas
Brown, a forensic pathologist, testified that Davis died from a stab wound to
the chest.  Davis suffered other
non-lethal knife wounds to his chest, neck and back, as well as injuries to his
head and cheek area.  He had first,
second, third degree burns on his body. 
Davis’s body was badly burned after his death.

Discussion

Standard of Review

We review
legal and factual sufficiency challenges using the same standard of
review.  Ervin v. State, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.]
2010, pet. ref’d) (construing majority holding of Brooks v. State, 323
S.W.3d 893, 912, 926 (Tex. Crim. App. 2010)). 
Under this standard, the evidence is insufficient to support a
conviction if, considering it in a light favorable to the verdict, no rational
factfinder could have found the essential elements of the charged offense
beyond a reasonable doubt.  See
Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068,
1071 (1970); Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).  We presume that the
factfinder resolved any conflicting inferences in favor of the verdict and
defer to that resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793;
Clayton, 235 S.W.3d at
778.  We defer to the factfinder’s
evaluation of the credibility and weight of the evidence.  See Williams, 235 S.W.3d at 750.

Murder and Law of
Parties 

          A person commits murder by
intentionally or knowingly causing the death of an individual or by intending
to cause serious bodily injury and committing an act clearly dangerous to human
life that causes the death of an individual.  See Tex.
Penal Code Ann. § 19.02(b)(1)(2). 
Under the law of parties, a jury can find a defendant guilty of murder
if it concludes that the defendant intentionally promoted or assisted in the
commission of the offense, or that the defendant solicited, encouraged,
directed, aided, or attempted to aid another person to commit the offense.  See Tex.
Penal Code Ann. § 7.02(a)(2) (West 2003).  A reviewing court may consider events
occurring before, during, and after the commission of the offense as evidence
of criminal responsibility under the law of parties.  See Trenor
v. State, 333 S.W.3d 799, 809 (Tex. App.—Houston [1st Dist.] 2010, no pet.)
(holding that evidence was sufficient to convict defendant under party-to-the-offense
theory because defendant assisted her husband in beating child, failed to seek
medical attention for child, and assisted in hiding evidence of child’s murder);
Ervin, 333 S.W.3d at 201 (holding that evidence was sufficient to
convict defendant for capital murder as co-conspirator when defendant knew of
plan to commit robbery, knew accomplices had guns, watched them put on masks
and hooded sweatshirts, and returned to pick them up after hearing gun shots).

          Analysis

          The trial court instructed
the jury on two separate theories for murder—Meeks as a primary actor and as a
party to the offense.  We examine the
evidence to determine whether it is sufficient to support Meeks’s conviction as
a party to the offense.  If it is
sufficient, we need not determine whether the evidence supports Meeks’s
conviction based on the other theory.  See Guevara
v. State, 152 S.W.3d
45, 49 (Tex. Crim. App. 2004) (holding that when court’s charge authorizes jury
to convict on more than one theory, verdict of guilty will be upheld if the
evidence is sufficient on any one theory).  

          Meeks contends that the
evidence is insufficient because he did not intend to promote or assist Perry
in Davis’s murder.  We disagree.  Meeks’s participation in the events before,
during, and after the offense supports the element of intent.  See Trenor,
333 S.W.3d at 809; Ervin, 333 S.W.3d at 201.  Meeks had threatened to
kill Davis.  Hours before Davis’s death,
Meeks attacked Davis and choked him.  He
and Perry went back to Davis’s house, where Perry told Meeks that it was time
to kill Davis and urged him to participate. 
As Meeks exchanged punches with Davis, Perry began stabbing Davis in the
back with a pocketknife.  Once Davis
retreated to the house, Meeks said that he knocked Davis out cold in his living
room.  Although Meeks later stated that
he did not knock Davis out, we presume that the jury resolved any conflicting
inferences in favor of the verdict and defer to that resolution.  See Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.   Perry then repeatedly stabbed Davis,
including the fatal stab wound to his aorta. 
Evidence thus exists that Meeks aided Perry by knocking Davis out so
that she could deliver the fatal stab wound. 
See Miller v. State, 83
S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref’d) (holding that some evidence
existed that defendant aided his brother in murder of victim by positioning his
car to facilitate his brother’s shooting of victim).  Meeks denied that he stabbed Davis, but he
admitted that he watched Perry do it. 
After Davis died, Meeks gathered up the weapons he could find, helped
pack Perry’s clothes, and stole some of Davis’s belongings.  Davis and Meeks then fled to Oklahoma.  Meeks hid the weapons in the woods along the
highway.  Meeks’s flight to Oklahoma
after Davis’s murder and his attempt to hide the weapons used in the attack is
further circumstantial evidence of his guilt. 
See Miller v. State, 177
S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (defendant’s
flight immediately after shooting and attempts to hide evidence is
circumstantial evidence of guilt); see
also Wygal v. State, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977)
(circumstantial evidence sufficient to show guilt as party).

          Meeks further contends
that the evidence is insufficient because only Perry stabbed Davis.  Proof that the defendant caused the fatal
injury is not necessary to support a murder conviction under the law of
parties.  See McFarland v. State, 928 S.W.2d 482, 496 (Tex. Crim. App.
1996) (“proof beyond a reasonable doubt that appellant fired the fatal shot is
not necessary for a capital murder conviction where the jury is charged on the
law of parties”), abrogated in part on other grounds by Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App. 1998).
 “The mere fact that appellant did not
inflict the most damaging blow to the victim does not relieve him of
responsibility for the victim’s murder.” Umoja v. State, 965 S.W.2d 3, 6 (Tex. App.—Fort
Worth 1997, no pet.).

Viewing the evidence in a light favorable to the
verdict, we conclude that a rational jury could have found beyond a reasonable
doubt that Meeks was a party to murder. See Tex. Penal Code Ann. § 7.02(a)(2).  Accordingly, we hold that the evidence is
sufficient to support the jury’s conviction.

Conclusion

We hold that the evidence supports
the jury’s conviction.  We therefore
affirm the judgment of the trial court.  

 

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Huddle.

Do not publish.  Tex.
R. App. P. 47.2(b).