**Opinion issued August 1, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00149-CR & 01-12-00150-CR

———————————

**GLEN TATE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1309786 & 1309787**

## O P I N I O N

A jury convicted appellant, Glen Tate, of two counts of aggravated sexual assault,[1] and the trial court assessed his punishment at imprisonment for life without parole. Appellant argues that (1) the State failed to prove his prior

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2012).

conviction for aggravated rape, which was used to enhance his convictions, and (2) the judgments should be reformed to reflect that the trial court, rather than the jury, assessed his punishment and that he pleaded "not true" to the enhancement paragraph. In a supplemental brief, appellant argues that juror misconduct deprived him of his rights to due process and a fair and impartial trial.

We affirm appellant's conviction, but we reverse the portion of the judgment assessing punishment and remand for a new punishment hearing.

## Background

Appellant was indicted on two counts of aggravated sexual assault of a child under the age of fourteen. At trial, the complainant, appellant's step-daughter, testified that she and appellant had sexual intercourse thirty to fifty times in the first half of 2009. The jury found appellant guilty.

Appellant's indictments for aggravated sexual assault of a child also contained the following enhancement paragraph:

> Before the commission of the offense alleged above, on February 24, 1981, in Cause Number 7724, in the 29th Judicial District Court of Palo Pinto County, Texas, the Defendant was convicted of the felony of Aggravated Rape.

Appellant pleaded "not true" to the enhancement paragraph and stated that he would not stipulate to any prior convictions.

In the punishment phase of the trial, the State introduced appellant's penitentiary packet ("pen packet"), including the judgment of appellant's 1981

conviction.  A fingerprint expert testified that appellant's fingerprints matched those in the pen packet.  However, the 1981 judgment included a notation that appellant "gave notice of appeal to the Court of Criminal Appeals, Austin, Texas." The pen packet did not contain evidence that the 1981 judgment of conviction became final.

The trial court found the enhancement paragraph true and assessed appellant's punishment at life in prison, and it signed the judgment on February 7, 2012.  That same day, the jury foreman sent the trial judge an e-mail, indicating that, prior to his selection as a juror and the trial court's admonishment not to conduct any research, he had executed a search of the Texas Department of Public Safety's Sex Offender Registry on his iPhone and discovered appellant's 1981 aggravated rape charge.  Specifically, the e-mail stated:

> [O]n Friday last, after 65 of us had been shepherded to the 179th, during a break and after learning of the defendant's name . . . , I left your court and walked to the hallway.  Something told me to access the Texas Department of Public Safety's Sex Offender's Registry on my I-Phone.  So, I did.  I searched Tate's name and his 1981 "[Aggravated] Rape" charge came up on the database.  (Mind you, this was prior to instruction from the Court/you so I believe I was within proper conduct to access a public domain database.[)]  Never believing that I would be selected, I kept this information to myself. Once I was impaneled, I debated whether to disclose the knowledge I learned concerning Mr. Tate's prior conviction.  I consulted an attorney friend and he encouraged me to maintain silence regarding my discovery because it was prior to being selected as a juror.  So, I did.  Even with this knowledge, I PURPOSED TO MAKE CERTAIN THAT I COMMIT MYSELF to maintain an open mind regarding Mr. Tate's innocence or guilt.  I never shared my knowledge with the rest

3

of the Jurors. It became clear during deliberations that a higher power was at work and as we discussed the case, it was truly amazing to observe how the twelve of us went from 2 undecided, 1 guilty *[sic]* and 9 guilties, morph to a unanimous decision to convict. After the rest of the jurors learned of Tate's priors, it was confirmation to them and me that we had made the correct decision.

On February 22, 2012, appellant moved to release personal information about jurors under Texas Code of Criminal Procedure article 35.29, alleging that the foreman's e-mail sent on February 7, 2012 constituted evidence of juror misconduct and that defense counsel needed the other jurors' contact information in order to determine whether any of them had been biased by the foreman's knowledge. The trial court granted this motion that same day. However, appellant never filed a motion for new trial.

## Juror Misconduct

In his supplemental issue, appellant argues that he "was deprived of his rights to due process and a fair and impartial trial due to jury misconduct when during voir dire a juror searched the Texas Department of Public Safety Sex Offender Registration website and found [appellant's] previous conviction for Aggravated Rape."

To preserve error caused by juror misconduct, the defendant must either move for a mistrial or move for a new trial supported by affidavits of a juror or other person in a position to know the facts alleging misconduct. *See Menard v. State*, 193 S.W.3d 55, 59 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Here,

4

appellant did not move for mistrial or for a new trial, even though his counsel was aware of the foreman's e-mail within the time period for filing a motion for new trial, as evidenced by the motion to release juror information. *See* TEX. R. APP. P. 21.4 (providing that motion for new trial must be filed within 30 days after date trial court imposes or suspends sentence in open court). Thus, it appears that appellant did not preserve this issue for consideration on appeal.

However, even if appellant had established the existence of an "outside influence" on a juror, because the foreman subsequently sat on the case, that act would not end the inquiry under *McQuarrie v. State*. *See* 380 S.W.3d 145, 154 (Tex. Crim. App. 2012) (defining "outside influence" as used in Rule of Evidence 606(b) as "something originating from a source outside of the jury room and other than from the jurors themselves"). Appellant would still have an obligation to show that the jurors who sat on his case were actually biased by the information that the foreman obtained. *See id.* (holding that juror's internet research during break from deliberations constituted outside influence under Rule 606(b) and trial court erred in refusing to allow jurors to testify regarding that outside influence); *see also Hines v. State*, 3 S.W.3d 618, 623 (Tex. App.—Texarkana 1999, pet. ref'd) ("A motion for new trial based on jury misconduct must be supported by a juror's affidavit alleging that 'outside influence' affected the jury's decision."). Although the record contains no sworn testimony from the foreman, his e-mail to

the trial court indicated that he believed he could remain unbiased and that he "never shared [his] knowledge with the rest of the Jurors." The record does not contain any evidence or allegation that the foreman's knowledge affected the jury's decision.

Moreover, this case is distinguishable from the "outside influence" line of cases appellant cites in support of his complaint. Appellant relies mainly on *McQuarrie*, in which the Court of Criminal Appeals held that internet research conducted by a juror during the course of deliberations constituted an "outside influence" about which the defendant should have been permitted to conduct a post-trial inquiry pursuant to Texas Rule of Evidence 606(b).[2] 380 S.W.3d at 154–55. Here, the foreman was not a juror at the time he conducted the internet search—he was still a member of the venire. This is a situation where a member of the venire panel had information relevant to the case—information acquired prior to being selected to serve on the jury—that was not discovered until after trial. Thus, this case is more closely analogous to those dealing with the conduct of venire members and their obligation to disclose information when questioned during voir dire.

---

[2] Texas Rule of Evidence 606(b) prohibits a juror from testifying about "any matter or statement occurring during the jury's deliberations," except when the testimony addresses "whether any outside influence was improperly brought to bear upon any juror" or "rebut[s] a claim that the juror was not qualified to serve." TEX. R. EVID. 606(b).

To obtain a new trial based on juror misconduct in a situation such as this, the defendant must show that the juror withheld material information during voir dire despite the defendant's due diligence. *Franklin v. State*, 138 S.W.3d 351, 355–56 (Tex. Crim. App. 2004). Diligence requires that counsel ask questions calculated to bring out information that might indicate a juror's inability to be impartial and truthful. *Armstrong v. State*, 897 S.W.2d 361, 363–64 (Tex. Crim. App. 1995). Unless defense counsel asks such questions, material information that a juror fails to disclose is not really "withheld." *Id.* at 364. Counsel must ask specific questions, not rely on broad ones, to satisfy this obligation and must ask follow-up questions after a potential bias is discovered. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999).

Here, the trial court asked if anyone knew appellant or any of the trial attorneys. However, no one asked the venire panel if they had any prior information regarding the case or had conducted any research on appellant or the charges against him. The foreman did not withhold this information, as he was never asked about it. Thus, appellant has failed to establish that he exercised due diligence in questioning the venire and that the foreman withheld material information in spite of his due diligence, so his claim of juror misconduct fails. *See Franklin*, 138 S.W.3d at 355–56; *Gonzales*, 3 S.W.3d at 917; *Armstrong*, 897 S.W.2d at 363–64.

We overrule appellant's supplemental issue.

## Enhancement Paragraph

In his first issue, appellant argues that the evidence was insufficient "for enhancement purposes" under Texas Penal Code section 12.42 because the State failed to prove that the 1981 judgment of conviction for the prior rape offense was final. Penal Code section 12.42 provides that "a defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life if . . . [he] has been previously convicted of an offense" under Penal Code section 22.021.[3] TEX. PENAL CODE ANN. § 12.42 (Vernon Supp. 2012).

In examining the sufficiency of the evidence, we view all of the evidence in the light most favorable to the judgment and determine whether any rational fact finder could have found the essential elements of the matter under review beyond a reasonable doubt. *See Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). To establish that an appellant was convicted of a prior offense, the State is required to prove beyond a reasonable doubt that a prior conviction exists and that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). When faced with a silent record regarding finality, we presume that the conviction is final once the State provides prima facie evidence of an enhancement conviction. *Fletcher v. State*, 214 S.W.3d 5, 8 (Tex. Crim. App.

---

[3] Penal Code section 22.021 provides the elements for establishing the crime of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon 2012).

8

2007). However, when the evidence raises a question as to the finality of the enhancement conviction, the State has the burden of proof to show that the prior conviction was a final conviction under the law. *See Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984); *Henry v. State*, 331 S.W.3d 552, 555 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Fletcher*, 214 S.W.3d at 8 (recognizing that the State must "prove the final disposition of an appeal from an enhancement conviction")); *see also Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005) ("[I]f the State's proof of the prior conviction shows on its face that the conviction was appealed, the State must put on evidence that [the] mandate has issued."). "It is well-established that a conviction from which an appeal has been taken is not considered a final conviction until it is affirmed by the appellate court and [the] mandate has issued." *Henry*, 331 S.W.3d at 555; *see also Russell v. State*, 790 S.W.2d 655, 657 (Tex. Crim. App. 1990) (holding that when judgment for prior conviction relied on in enhancement paragraph recited on its face that defendant gave notice of appeal and state gave no other evidence regarding finality of conviction, evidence was "insufficient to satisfy the predicate necessary for the conviction's use to enhance").

Here, the State concedes error. The judgment from appellant's 1981 conviction stated on its face that appellant gave notice of appeal to the Court of Criminal Appeals. The State presented no evidence regarding the finality of this

9

conviction. Accordingly, we conclude that the evidence was insufficient to establish the predicate necessary to use the conviction to enhance appellant's punishment. *See id.* Accordingly, we remand for a new hearing on punishment.[4] *See Henry*, 331 S.W.3d at 556 (citing TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp. 2012)).

## Conclusion

We affirm appellant's conviction but reverse the portion of the judgment assessing punishment. We remand for a new hearing on punishment.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).

---

[4] In his second issue, appellant argues that the written judgment should be reformed to correctly reflect that he pleaded "not true" to the enhancement paragraph and that the trial court assessed punishment at life imprisonment. Because we are remanding the case to the trial court for a new punishment hearing, this issue is moot.