ACCEPTED
13-14-00312-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
2/26/2015 3:27:22 PM
DORIAN RAMIREZ
CLERK

CAUSE NO. 13-14-00312-CR


IN THE COURT OF APPEALS
FOR THE THIRTEENTH SUPREME JUDICIAL DISTRICT
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
2/26/2015 3:27:22 PM
DORIAN E. RAMIREZ
Clerk

ARTURO SANCHEZ ALMAGUER., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


APPEAL OF TRIAL COURT CASE NO. CR-1214-12-D
FROM THE 206TH JUDICIAL DISTRICT OF HIDALGO COUNTY, TEXAS
The Honorable Rose Guerra Reyna, Presiding


**BRIEF OF STATE/APPELLEE**


RICARDO RODRIGUEZ, JR.
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY TEXAS

MICHAEL W. MORRIS, ASSISTANT
State Bar No. 24076880
Lead Counsel for Appellee

Office of Criminal District Attorney
Hidalgo County Courthouse
100 N. Closer Blvd.
Edinburg, Texas 78539
Telephone:  (956) 318-2300 ext. 781
Telefax:     (956) 380-0407
Michael.Morris@da.co.hidalgo.tx.us

ATTORNEYS FOR THE STATE

Oral argument is not requested


i

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT in this case is Santo Arturo Sanchez Almaguer.

APPELLANT is represented on appeal by Hon. O. Rene Flores, 1308 S. 10th ave. Edinburg, Texas 78539.

APPELLANT was represented at trial by Hon. Rogelio Garza, 310 W. University Dr., Edinburg, Texas 78539 and the Hon. Pamela Alexander, 4009 S. Sugar Rd., Edinburg, Texas 78539.

APPELLEE in this case is the State of Texas, by and through her District Attorney for Hidalgo County, the Hon. Ricardo Rodriguez, Jr., Office of Criminal District Attorney, Hidalgo County Courthouse, 100 N. Closner Blvd., Edinburg, Texas 78539.

APPELLEE is represented on appeal by Hon. Michael W. Morris, Assistant District Attorney for Hidalgo County, Hidalgo County Courthouse, 100 N. Closner Blvd., Edinburg, Texas 78539.

APPELLEE was represented at trial by Hon. Victoria Muniz, Assistant District Attorney for Hidalgo County, and Hon. Joaquin Zamora, Assistant District Attorney for Hidalgo County, Hidalgo County Courthouse, 100 N. Closner Blvd., Edinburg, Texas 78539.

# TABLE OF CONTENTS

Identification of Counsel and Parties ................................................................. ii

Table of Contents ............................................................................................... iii

Index of Authorities .......................................................................................... iv

Notation as to Citation ...................................................................................... vi

Statement of the Case ....................................................................................... vii

Issues Presented (Restated) ............................................................................. vii

Note as to Oral Argument ............................................................................... vii

Statement of Facts ...............................................................................................1

Summary of the Argument ..................................................................................4

Argument ..............................................................................................................5

I.      **The evidence was legally sufficient to support the verdict** ...................5

    A.   **Guilt as a Principal** ......................................................................6

    B.   **Guilt as a Party** ......................................................................... 11

II.     **Appellant was not entitled to a new trial, the court properly excluded the juror testimony under 606(b)** ........................................ 13

    A.   **Juror Testimony** ...................................................................... 13

    B.   **New Trial Motion** .................................................................... 16

Prayer for Relief ............................................................................................... 17

Certificate of Compliance ................................................................................ 18

Certificate of Delivery ..................................................................................... 19

# INDEX OF AUTHORITIES

## Cases

*Beardsley v. State*, 738 S.W.2d 681 (Tex. Crim. App. 1987) ..................... 11, 12

*Chambers v. State*, 805 S.W.2d 459 (Tex. Crim. App. 1991) ............................6

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007) ........................... 5, 6

Colyer v. State, 428 S.W.3d 117 (Tex. Crim. App. 2014) .............................. 15

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001) ...................................6

*Curry v. State*, 30 S.W.3d 394 (Tex. Crim. App. 2000) .....................................6

*Ex Parte Prior*, 540 S.W.2d 723 (Tex. Crim. App. 1976*)* ................................ 12

*Franks v. State*, 90 S.W.3d 771 (Tex. App.--Fort Worth 2002) ....................... 15

*Goff v. State*, 931 S.W.2d 537 (Tex. Crim. App. 1995) ................................... 11

*Gomez v. State*,
991 S.W.2d 870 (Tex. App. - Houston [1st Dist.] 1999, pet. ref'd.) ........... 12, 16

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ................................. 5, 6

*Hicks v. State*,
15 S.W.3d 626 (Tex. App. -- Houston [14th Dist.] 2000, pet ref'd) ................ 14

*Hines v. State*, 3 S.W.3d 618(Tex. App.--Texarkana 1999, pet. ref'd).............. 14

*Jackson v. Virginia*, 443 U.S. 307 (1979*)* ...................................................... 5, 6

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ............................ 7, 11

*Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002) ................................ 11

*Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486 (5th Cir. 1987) ....................... 15

Powell v. State, 194 S.W.3d 503 (Tex. Crim. App 2006) ................................ 11

*Sorto v. State*, 173 S.W.3d 469 (Tex. Crim. App. 2005) ................................... 11

*Tate v. State*,
414 S.W.3d 260 (Tex. App.--Houston [1st Dist.] 2013, no pet.) .................... 15

*Thomas v. State,*
352 S.W.3d 95 (Tex. App. - Houston [14th Dist.] 2011, pet. ref'd) .......... 12, 16

*Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009*)* ......................... 6, 7

*Wygal v. State*, 555 S.W.2d 465 (Tex. Crim. App. 1977) ................................ 11

## Statutes and Rules

TEX. PENAL CODE § 7.02(a)(2) (2013)..................................................... 7, 11, 12

TEX. PENAL CODE § 7.02(b) (2013) ........................................................ 7, 11, 12

TEX. PENAL CODE § 19.02(b)(1) (2013)............................................................7

TEX. PENAL CODE § 19.03(a)(2) (2013)............................................................7

TEX. PENAL CODE § 30.02 (2013)................................................................. 8

Tex. Evid. R. 606(b)(2013)...................................................................... 14, 16

# NOTATION AS TO CITATION

Citation to the record of the case below will be as follows:

1. Citation to the twenty-one volume Reporter's Record (RR) and the one volume Supplemental Reporter' Record (SRR) will be to volume and page, e.g., "2 RR 12" refers to page 12 of volume 2 of the Reporter's Record.

    a. Citation to State's exhibits will be to volume and exhibit, e.g., "21 RR SX 1" refers to State's exhibit one found within volume 21 of the Reporters Record.

    b. Citation to Defense's exhibits will be to volume and exhibit, e.g., "21 RR DX 1" refers to Defense's exhibit one found within volume 21 of the Reporters Record.

2. Citation to the single-volume Clerk's Record (CR) will be to page only, e.g., "CR 015" refers to page 15 of the Clerk's Record.

3. Citation to Appellant's Brief (AB) will be to page only, e.g., "AB 6" refers to page 6 of the Appellant's Brief.

## STATEMENT OF THE CASE

The State adopts Appellant's Statement of the Case.

## ISSUES PRESENTED

The State adopts Appellant's Issue Presented[1].

## NOTE AS TO ORAL ARGUMENT

The State of Texas respectfully submits that oral argument in the case at bar would not serve to enlighten the Court further, because the facts and legal arguments are adequately presented in the briefs and record. The State respectfully submits that oral argument in the instant case is not necessary and should therefore be denied.

The State reserves the right to present oral argument should the Court grant oral argument.

---

[1] The State has combine Appellant's second through fourth issue into one as they are interrelated.

## STATEMENT OF FACTS

Officer Moreno was dispatched to the 2300 block of Business 83 in Weslaco on a report of shots fired and the Magic Valley Trailer Park at 11:26 on November 12, 1988. 15 RR 20-21. Officer Moreno arrived at the trailer park minutes later and was directed by Eileen Meyers to the trailer home in which the shots were fired. 15 RR 22, 28-29. Officer Moreno entered the trailer home through the front door. 15 RR 22. The trailer was located at 425 Neepawa. 15 RR 111. The front door was on the North side of the trailer. The front door had been slightly ajar. 15 RR 29. Officer Moreno observed the bodies of two individuals, a middle aged female and a middle aged male, in the kitchen. 15 RR 22. The bodies were identified as that of Evan Squires and Wilma Squires; the owners of the trailer home. 15 RR 42. Officer Moreno observed that both individuals appeared to have been shot. 15 RR 23. Neither individual was responsive. 15 RR 22. Upon observing the bodies, Officer Moreno requested EMS support as well as investigators from Weslaco Police Department. 15 RR 22-23.

During a further investigation of the trailer home, Officer Moreno observed that the phone in the kitchen was off the hook and that there was a pile of feces on the ground in one of the rooms. 15 RR 24. The feces appeared be human and to be very fresh. 15 RR 24.

1

Investigator Bruce Kennedy arrived shortly after investigative support was requested by Officer Moreno. 15 RR 55. Investigator Kennedy also observed a pair of jean shirts covered in feces and the feces on the carpet in the trailer; he also observed that it was very fresh and processed a strong odor. 15 RR 66-67. Investigator Kennedy conducted a walk around of the exterior and interior of the trailer with his personal video recorder. He observed that the trailer possessed two external doors; the front door on the north and the side door on the west. 15 RR 83. Investigator Kennedy also observed a box of silverware that was out of place and appeared to have been in the process of being gathered up by the burglars. 15 RR 66.

Identification officer Patsy Pemelton was also called to the scene to photograph the scene and act as the evidence technician. 15 RR 110, 112, 122. Ms. Pemelton also observed the silverware box as being out of place. 15 RR 115-16. Ms. Pemelton also observed a machete on a chair and a radio that was wrapped up. 15 RR 116.

During her assessment Ms. Pemelton also observed a trail of clothes leading from the side door down to a drain ditch some distance away. 15 RR 146-47. Ms. Pemelton located a Mexican hand bag that contained clothes at the end of the trail near the ditch. 15 RR 148. She also discovered a torn shirt that was covered in feces at that location. 15 RR 148. Ms. Pemelton collected the fecal covered jean

2

shorts and the fecal covered shirt as evidence. 15 RR 168-70. She also helped collect the round lodged in the address book. 15 RR 122.

Mr. Squires' body was laying face down in the bathroom with his feet and legs near his wife's head in the hall/kitchen. 15 RR 127; 21 RR SX 44. Mr. Squires was shot at intermediate to close range in the chest. 15 RR 132-33, 231-32. The round exited and lodged in the wall directly across from the bathroom door. 15 RR 156-57. Mrs. Squires was shot twice; once in the chest and again in the stomach. 15 RR 122. The rounds exited and entered the wall in the hall. 15 RR 156. Both Mr. Squires and Mrs. Squires died as a result of the gunshot wounds. 15 RR 239-40.

In 2000, the DPS lab in McAllen received a request to process the fecal covered shirt and jean shorts collected at the crime scene for DNA. 16 RR 32. In 2005, the DPS DNA lab was able to obtain partial DNA profiles from fecal stains on both the shirt and the jean shorts. 16 RR 32-33. The profiles had been degraded by the passage of time and the bacteria present in the fecal matter. 16 RR 37-39. Analyst Alejandro Madrigal, Jr. testified that DNA does not expire, rather it can degrade such that the specific locations tested for by a crime lab are unreadable; the DNA will not degrade into someone else's DNA. 16 RR 26, 38-40.

3

In 2012, the DPS DNA lab received a known sample from Appellant and tested the partial DNA profiles from the shirt and jean shorts against Appellant DNA profile. 16 RR 33. Appellant could not be eliminated as a potential contributor to either profile and was deemed to be consistent with the DNA profiles. 16 RR 35.

Analyst Madrigal represented the probability that an unrelated person at random who could be the source of the DNA profile on the jean shorts was approximately one in 138.1 million for Caucasians, one in 80.52 million for blacks and one in 89.13 million for Hispanics. 16 RR 38. Analyst Madrigal represented the probability that an unrelated person at random who could be the source of the DNA profile on the jean shorts was approximately one in 9.699 quadrillion for Caucasians, one in 13.79 quadrillion for blacks and one in 7.424 quadrillion for Hispanics. 16 RR 38.

## SUMMARY OF THE ARGUMENT

The evidence was sufficient to place Appellant in the Squires' home and to show that a burglary was in progress when Mr. and Mrs. Squires were murdered. The evidence further establishes that through logical inferences, Appellant was either the shooter or was a party to his accomplice's actions which caused the deaths of Mr. and Mrs. Squires.

The trial court did not error in excluding the juror testimony as it related to the jury's deliberations under Texas Rules of Evidence 606(b). Further the Trial Court did not error in denying Appellant's motion for new trial, as Appellant failed to establish jury misconduct through competent and admissible evidence.

## ARGUMENT

### I.    The evidence was legally sufficient to support the verdict.

In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. In making this determination, the reviewing court considers all the evidence admitted that will sustain the conviction, whether properly or improperly admitted.  *Clayton v. State*, 235

5

S.W.3d 772, 778 (Tex. Crim. App. 2007); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  It is the duty of the fact finder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

If the record supports conflicting inferences, the reviewing court must presume that the fact-finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93.  Further, both direct and circumstantial evidence are treated equally: "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13.

Finally, it is well established that the fact-finder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

6

describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

Thus, under the hypothetically correct jury charge for this case, Appellant committed the offense of Capital Murder if he intentionally or knowingly caused the death of Evan Squires or Wilma Squires while in the course of committing or attempting to commit the offense of Burglary, if acting with intent to promote or assist in the commission of the offense, he solicited, encouraged, directed, aided, or attempted to aid another person in intentionally or knowingly causing the death of Ann Marie Garcia while in the course of committing or attempting to commit the offense of burglary or if while acting in a conspiracy to commit burglary another person murders a victim in furtherance of the ongoing criminal conspiracy. *See* TEX. PENAL CODE §§ 7.02(a)(2), 7.02(b), 19.02(b)(1), 19.03(a)(2) (2013).

## A. Guilt as a Principal

In his first claim, Appellant alleges that the evidence was legally insufficient to support his conviction of Capital Murder. Appellant was charged with Capital Murder under section 19.03(a)(2) of the Penal Code, in that the State alleges that Appellant murdered Evan Squires and Wilma Squires during the course of committing a Burglary. As such, the State was required to prove that Appellant intentionally or knowingly killed Mr. and Mrs. Squires while engaged in a burglary of a habitation. *See* TEX. PENAL CODE § 19.03(a)(2). To prove burglary, the State

7

was required to prove that Appellant had entered a habitation without the consent of the owner with the intent to commit a felony, theft or assault there in. *See* TEX. PENAL CODE § 30.02.

In the instant case, the evidence supports that any entry was without the permission of the owners, Mr. and Mrs. Squires, as the evidence suggests that Mr. and Mrs. Squires were asleep at the time. 15 RR 134-36; 21 RR SX 57. Mrs. Squire's son, William Jury, testified that his mother and her husband routinely went to bed at an early hour, usually by 10 p.m. 16 RR 14. Police were called out the Squires residents at 11:26 p.m. on a report of shots fired at the Magic Valley Trailer Park. 15 RR 20-21. The responding officer arrived within minutes and was directed to the Squires' residence. 15 RR 49. The Squires' bed appeared to have been slept in. 15 RR 15 RR 134-36; 21 RR SX 57. Further the entry or at least the shots fired occurred after 11 p.m. 15 RR 20-21. From this, the jury could reasonably infer that any entry was without Mr. or Mrs. Squires consent. Further, officers testified that several items in the house were out of place and appeared to have been moved by the burglars in anticipation of theft to include a box of silverware and a radio. 15 RR 66, 115-16. Officers also testified that they found a pair of jean sorts covered in feces and a pile of feces on the carpet under the jeans. The fecal matter was fresh. 15 RR 24, 67, 140. Further, a trail of clothes was found leading from the Squires' trailer to a ditch several hundred feet away. 15

8

RR 146-47. At the end of this trail officers found a torn shirt that was also covered in fecal material. 15 RR 148. Additionally, Mrs. Squires purse/wallet was found a week later, some distance further south in line with Appellant's potential path of egress. 15RR 177-78. The wallet's condition was consistent with having been outside for a week. 15 RR 205-06.

Appellant's DNA places him in the trailer[2] and at the end of the trial of clothes leading away from the trailer[3]. The freshness of the feces places Appellant in the trailer at or near the time of the shots being fired. Further, the feces on the shirt connect Appellant to the burglary, as it connects him to the trail of clothes leading away from the trailer to the ditch.

To prove that Appellant was guilty of Capital murder, the State further had to prove that he intentionally or knowingly shot Mr. and Mrs. Squires causing their deaths. Mr. and Mrs. Squires were discovered in their trailer with bullets wounds by the responding officer. Neither Mr. Squires nor Mrs. Squires had a pulse or was

---

[2] Appellant's DNA was recovered from the fecal material on a pair of jean shorts found in the hobby room of the trailer. 15 RR 70, 173; 16 RR 30. The DNA was consistent with Appellant's known sample and he could not be excluded. 16 RR 34-35. The analyst represented the probability that an unrelated person at random who could be the source of the DNA profile on the jean shorts was approximately one in 138.1 million for Caucasians, one in 80.52 million for blacks and one in 89.13 million for Hispanics. 16 RR 38.

[3] Appellant's DNA was recovered from the fecal material on a shirt recovered at a ditch southwest of the trailer at the end of a trail of clothing leading from the trailer to the ditch. 15 RR 148, 173; 16 RR 31. The DNA was consistent with Appellant's known sample and he could not be excluded. 16 RR 34-35. The analyst represented the probability that an unrelated person at random who could be the source of the DNA profile on the jean shorts was approximately one in 9.699 quadrillion for Caucasians, one in 13.79 quadrillion for blacks and one in 7.424 quadrillion for Hispanics. 16 RR 37-38.

responsive when the responding officer arrived minutes after having been dispatched to the report of shots fired. 15 RR 22. Dr. Norma Jean Farley, the forensic pathologist, testified that Mr. and Mrs. Squires were killed by gunshot wounds. 15 RR 239-40. The gunshot wounds on Mr. Squires and Mrs. Squires had powder tattooing or stippling. 15 RR 126, 133, 232-38. Such powder tattooing is consistent with a shot fired from intermediate range of between two to four feet. 15 RR 233. As such, both Mr. Squires and Mrs. Squires were shot from close range showing evidence that the shooting was intentional. Further the placement was such that it was fatal. 15 RR 239-40.

Mr. Squires was shot from the front, with an exit wound out the back and fell into the bathroom. 15 RR 238-39; 21 RR SX 43 and 48. Appellant left evidence, from which it is logical and rational to surmise, that he was having bowel trouble in that he defecated in the hobby room of the trailer. Further, Appellant later defecated at the ditch after leaving a trail of clothes along his path of egress. It would also be rational and reasonable to place Appellant in the bathroom of the trailer given such bowel trouble. It would further be a rational inference that Mr. Squires was shot by someone who was in the bathroom as Mr. Squires fell into the bathroom and the round exited his body and lodged in the wall opposite the bathroom door. 15 RR 157; 21 RR SX 73.

10

## B. Guilt as a Party

It is proper to submit a jury charge on either Section 7.02 (a) (2) or Section 7.02 (b) of the Penal Code, although those concepts are not alleged in the indictment. *See, e.g., Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App 2006); *Sorto v. State*, 173 S.W.3d 469, 476 (Tex.Crim.App. 2005); *Marable v. State*, 85 S.W.3d 287, 287-88 (Tex.Crim.App. 2002); *Goff v. State*, 931 S.W.2d 537, 544 n. 5 (Tex.Crim.App. 1995). Further, the evidence adduced at trial raised the issue of party liability as the evidence suggests that multiple persons participated in the burglary. 15 RR 85. Under *Malik*, a hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2dat 240. The jury charge under either Section 7.02 (a) (2) or Section 7.02 (b) of the Penal Code was raised by the evidence and was authorized by the indictment. A hypothetically correct jury charge should have included by party liability under section 7.02(a)(2) and conspiracy liability under Section 7.02(b).

To determine whether an accused is a party to an offense such that he bears criminal responsibility, "the court may look to events before, during, and after the commission of the offense." *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987) (citing *Wygal v. State*, 555 S.W.2d 465 (Tex. Crim. App. 1977); *Ex*

11

*Parte Prior*, 540 S.W.2d 723 (Tex. Crim. App. 1976)). Participation in a criminal enterprise need not be shown by direct evidence, and "may be inferred from the circumstances." *Beardsley*, 738 S.W.2d at 684.

Appellant is guilty of the charge of capital murder under party or conspirator liability. Given the evidence that places Appellant at the scene of a burglary in conjunction with evidence that the burglary was committed by multiple parties, Appellant would be criminally responsible for the murders of Mr. and Mrs. Squires if the murders were the result of actions of his accomplice, taken in furtherance of an ongoing criminal conspiracy or if he aided, abetted, encouraged or solicited or attempted to aid, abet, encourage or solicit the accomplice's actions in shooting Mr. and Mrs. Squires. *See* TEX PENAL CODE § 7.02(a)(2) and §7.02(b).

The murders happen when the Squires discovered the intruders in their house and were done to enable the intruders to get away. Mr. Squires was shot in such as way that he fell into the bathroom and the bullet was lodged in the wall opposite the bathroom door. 15 RR 157; 21 RR SX 73. The evidence shows that Mr. Squires was shot from the bathroom at close range. 15 RR 133; 232-38. The bathroom had only one exit; the door through which Mr. Squires fell. *See* 21 RR SX 15; SX 42. It was a reasonable inference that the only way out of the bathroom would be through Mr. Squires. Neither victim owned any firearms. 16 RR 19. As such, Appellant and his accomplice took the weapon with them to commit the

12

burglary.  In light of this, it was reasonably foreseeable that any occupants discovered in the residence would be shot.  In this case, if Appellant was not the shooter, then his accomplice was the shooter and the murders were done in furtherance of the ongoing conspiracy to commit burglary.

**II.  Appellant was not entitled to a new trial, the court properly excluded the juror testimony under 606(b).**

In his second, third and fourth issues, Appellant contends that the Trial Court abused its discretion when it denied his motion for new trial alleging improper jury conduct, and further abused its discretion in not admitting the testimony of juror Maribel Martinez.

To demonstrate jury misconduct, the defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. *See Thomas v. State,* 352 S.W.3d 95, 102 (Tex. App. - Houston [14th Dist.] 2011, pet. ref'd); *Gomez v. State*, 991 S.W.2d 870, 871 (Tex. App. - Houston [1st Dist.] 1999, pet. ref'd).

**A. Juror Testimony**

In his motion for new trial Appellant alleges that he jury improperly considered party liability.  In support of this contention, he avers that at least one juror would testify that they discussed the theory of party liability during deliberations.  The State would first note that this would require that the juror testify about the deliberations or the effect of a theory on their mental processes in

reaching a verdict. This would be in direct contravention of Texas Rule of Evidence 606(b). *See* Tex. Evid. R. 606(b). Appellant now contends that Texas Rule of Evidence 606(b) is unconstitutional, at least as applied to him. AB at 31. However, Texas Rule of Evidence 606(b) has been upheld as a constitutional under both the state and federal constitution as it strikes an appropriate balance between a defendant's rights, protecting jury deliberations, and the finality of convictions. *See Hicks v. State*, 15 S.W.3d 626, 630-31 (Tex. App. -- Houston [14th Dist.] 2000, pet ref'd); *Hines v. State,* 3 S.W.3d 618, 622-623 (Tex.App.--Texarkana 1999, pet. ref'd).

To overcome an objection to the admission of juror testimony under 606(b), the proponent of the evidence must show that it meets an exception: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve. *See* Tex. Evid. R. 606(b). An outside influence has been defined as something originating from a source outside of the jury room and other than from the jurors themselves.

Here, Appellant alleges that the State's voir dire on the Law of Parties was an outside influence such that the juror should have been allowed to testify. However, the information related to the venire members is not an outside influence as it is a part of the court proceeding. The State is fully allowed to explore the law it believes will apply to the case. Additionally it was not improperly brought to

14

bear on the jurors. *See Colyer v. State*, 428 S.W.3d 117, 124-25 (Tex. Crim. App. 2014). It was not legal or factual information given to the jury with the intent of influencing their deliberating. *Id.* Rather it was given by the State during voir dire as the State believed that the Law of parties would be applicable to the facts of the case and needed to question the jury on the intricacies so as to allow the State to form an informed and impartial jury that could follow the law. Further, Appellant did not object to this line of questioning during voir dire. *See* 14 RR *passim*. Additionally, outside influence refers to that which is outside the normal court room proceedings. *See Franks v. State*, 90 S.W.3d 771, 802 (Tex. App. Fort Worth 2002) citing *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 488-89 (5th Cir. 1987). This is not an outside influence.

Further, it is information that was given to them prior to becoming petit jurors and became information known by the venire members. *See Tate v. State*, 414 S.W.3d 260, 264 (Tex. App.--Houston [1st Dist.] 2013, no pet.). As this was information the venire had before becoming jurors, it was not something originating from a source outside of the jury room and other than from the jurors themselves. It became part of the jurors' personal knowledge and experience, which is not outside influence.

**A. New Trial Motion**

As discussed in the previous section, any testimony from the jurors would have been inadmissible under Texas Rule of Evidence 606(b). Appellant's proffer is likewise inadmissible under Texas Rule of Evidence 606(b), as it was a proffer of what Juror Maribel Martinez would testify to with regards to the jury deliberations. AB 34-35, 20 RR 29-30. Appellant did not have the necessary evidence to support his juror misconduct claim as without testimony from the jurors, the only evidence was the jury notes requesting clarification of the law of parties. Appellant was required to shown the jury misconduct to prevail on this claim. *See Thomas,* 352 S.W.3d at 102*; Gomez*, 991 S.W.2d at 871. On this record, the trial court did not abuse its discretion in denying Appellant's motion for new trial.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas respectfully requests that the judgment of the trial court be, in all things, AFFIRMED.

Respectfully submitted,

RICARDO RODRIGUEZ, JR.
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY TEXAS


____/s/ Michael W. Morris _____
Michael W. Morris, Assistant
Criminal District Attorney

State Bar No. 24076880

Office of Criminal District Attorney
Hidalgo County Courthouse
100 N. Closner Blvd.
Edinburg, Texas 78539
Telephone:  (956) 318-2300 ext. 781
Telefax:      (956) 380-0407
Michael.Morris@da.co.hidalgo.tx.us

ATTORNEYS FOR THE STATE

17

## Certificate of Compliance

I hereby certify that this document has the following number of words:

    A. Initial documents—beginning at cover page and ending at *Note as to Oral Argument*:  977 words

    B. Brief:  4234 words

    C. Total:  5211 words

Respectfully submitted,


_/s/ Michael W. Morris_____
Michael W. Morris, Assistant
Criminal District Attorney

State Bar No. 24076880

Office of Criminal District Attorney
Hidalgo County Courthouse
100 N. Closner Blvd.
Edinburg, Texas 78539
Telephone:  (956) 318-2300 ext. 781
Telefax:  (956) 380-0407
Michael.Morris@da.co.hidalgo.tx.us

## CERTIFICATE OF DELIVERY

This is to certify that a true and correct copy of the foregoing Brief of State/Appellee was sent to Appellant's attorney of record, O. Rene through the electronic filing service.

\_\_\_/s/ Michael W. Morris _____
Michael W. Morris