**AFFIRMED as MODIFIED; and Opinion Filed July 25, 2023**



**In The**

**𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘**
**𝕱𝖎𝖋𝖙𝖍 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕿𝖊𝖝𝖆𝖘 𝖆𝖙 𝕯𝖆𝖑𝖑𝖆𝖘**

**No. 05-22-00526-CR**

**JOSE ALBERTO GARCIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 363rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F22-00230-W**

**MEMORANDUM OPINION**

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Smith

Appellant Jose Alberto Garcia was convicted by a jury for the offense of capital murder. *See* TEX. PENAL CODE ANN. § 19.03. The State did not seek the death penalty and, thus, the trial court automatically sentenced him to life imprisonment without the possibility of parole. *Id.* § 12.31(a)(2). In three issues, Garcia challenges the sufficiency of the evidence to support his conviction, including the jury's rejection of his claim of self-defense, and the admission of police testimony regarding the meaning of abbreviations and slang words used in text and Instagram messages. On our own motion, we modify the judgment to reflect the

State waived the death penalty and, therefore, the related special issues were not submitted to the jury. Because we conclude the evidence is sufficient to support Garcia's conviction for capital murder and the trial court did not err in admitting the detective's testimony, we affirm the judgment as modified.

## Factual Background

The victims in this case were twenty-one-year-old Christian Marmolejo and seventeen-year-old Jason Baez. At the time of the offense, Garcia was eighteen years old and lived with the following people: his sister, Laysha Garcia; Laysha's boyfriend, Christopher Avila; his girlfriend, Dunia Figueroa; and Avila's cousin, Luis Gonzalez. Each of the five roommates were ultimately charged with the capital murder of Marmolejo and Baez.

## Sufficiency of the Evidence

In reviewing the legal sufficiency of the evidence, we consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

–2–

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

When conducting a legal sufficiency review, we consider all evidence in the record regardless of whether it was properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We review the evidence in the light most favorable to the verdict and defer to the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *see also Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Isassi*, 330 S.W.3d at 638. The jury may choose to believe or disbelieve any part of any witness's testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton*, 235 S.W.3d at 778.

A criminal conviction may be supported by both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Id.* "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To prove that Garcia committed capital murder as charged in the indictment, the State had to prove, beyond a reasonable doubt, that he intentionally or knowingly caused the deaths of Marmolejo and Baez during the same criminal transaction. TEX.

–3–

PENAL CODE §§ 19.02(b)(1), 19.03(a)(7)(A). In the alternative, the State had to prove that Garcia committed capital murder by intentionally causing the death of Marmolejo in the course of committing or attempting to commit robbery. *Id.* § 19.03(a)(2). A person commits robbery if, in the course of committing theft, and with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a)(2). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to a result of his conduct when he is aware of the nature of his conduct or when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). The intent of a defendant may be inferred by his acts, words, and conduct, as well as the method he used to commit the crime and the nature of the wounds inflicted on the victim. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). "In assaying the record for evidence of intent, we look to 'events before, during and after the commission of the offense.'" *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (quoting *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977)).

A person can be criminally responsible for the conduct of another and, thus, criminally responsible for the offense if, "acting with intent to promote or assist the

commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE §§ 7.01(a), 7.02(a)(2). There must be sufficient evidence of an understanding or common scheme to commit the offense. *Gross v. State*, 380 S.W.3d 181, 186, 188 (Tex. Crim. App. 2012). A person can also be criminally responsible for an offense when it occurs while carrying out a conspiracy:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE § 7.02(b). Thus, as relevant here, the State could also prove Garcia committed capital murder by conspiring to commit robbery or aggravated assault and, in carrying out the conspiracy, one or more of the conspirators murdered Marmolejo and Baez. *See, e.g.*, *Frank v. State*, 183 S.W.3d 63, 73 (Tex. App.—Fort Worth 2005, pet. ref'd); *Thompson v. State*, 54 S.W.3d 88, 95–97 (Tex. App.—Tyler 2001, pet. ref'd).

Where the defendant has claimed he was justified in shooting the victim, our sufficiency review includes a determination of whether any rational juror could have rejected appellant's self-defense and defense of a third person claims beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). The

defendant bears the burden to produce evidence of self-defense or defense of another, while the State bears the burden of persuasion to disprove the defensive issues raised. *Id.* at 608. Thus, "we look not to whether the State presented evidence which refuted [the defendant's] self-defense testimony" but, instead determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational juror could have found the essential elements of the offense beyond a reasonable doubt and also could have found against the defendant on the issues of self-defense or defense of another beyond a reasonable doubt. *Id.* (quoting *Saxton*, at 914). Self-defense is a fact issue for the jury, and a guilty verdict is an implicit finding rejecting the defendant's theory of self-defense. *Saxton*, 804 S.W.2d at 913–14.

A person is justified in using deadly force when a person reasonably believes the force is immediately necessary to protect the person against another's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of, among other offenses, murder. TEX. PENAL CODE § 9.32(a). Deadly force is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A reasonable belief is one that an ordinary and prudent person would hold in the same circumstances as the actor. *Id.* § 1.07(a)(42). The actor's belief that deadly force was immediately necessary is presumed to be reasonable if the actor (1) knew or had reason to believe that the person against whom the force was used was

committing or attempting to commit murder; (2) did not provoke the person against whom the force was used; and (3) was not otherwise engaged in criminal activity. *See id.* § 9.32(b)(1)(C), (b)(2)–(3).

A person is justified in using deadly force against another to protect a third person if the actor would be justified in using deadly force to protect himself against the unlawful deadly force he reasonably believes to be threatening the third person and if the actor reasonably believes that his intervention is immediately necessary to protect the third person. *Id.* § 9.33.

Garcia argues in his first and second issues that the evidence was legally insufficient to show that he committed capital murder. He contends that the evidence shows that he killed Marmolejo in self-defense. And, even if the jury could have rejected his self-defense claim, the evidence shows that he committed murder, not capital murder because there was no evidence that he was involved with the alleged aggravated assault or robbery. Deferring to the jury's credibility determinations, as we must, *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010), we disagree that the evidence is legally insufficient to support Garcia's conviction for capital murder.

The evidence at trial showed that in the early morning hours of May 15, 2020, Marmolejo picked up Laysha and Figueroa after Laysha messaged Marmolejo looking for marijuana. While they drove around, Laysha kept in contact with her boyfriend, Avila. Text and Instagram messages recovered from their phones showed

that Laysha and Avila were trying to coordinate locations so that Avila could rob Marmolejo. Laysha advised Avila that Marmolejo was "bared out" (meaning they took Xanax) and "just has that gun," a picture of which she sent to Avila showing him it was in the center console; she asked what she should do. Avila told her to tell Marmolejo that she "got a plug," meaning a dealer, as they were still looking for marijuana. Avila also told her to flirt with Marmolejo so she could get his gun, and in a later message Avila told her to make sure Figueroa got the gun because Garcia would be waiting for it so that they would have two guns. Avila and Laysha attempted to coordinate a meet several times without success.

Laysha continued to advise Avila as to their whereabouts and, at one point, told Avila that Marmolejo had money so Avila should be sure to take his wallet. Laysha later took Xanax as well and told Avila she felt like she had to because Marmolejo was watching. She started to not feel well, and Avila messaged that he was coming for her. At 6:21 a.m., she asked, "Are you still robbing him?" Avila responded, "Yes." At 6:22 a.m., Laysha called Avila from the gas station where the incident ultimately occurred.

Araceli Ramos, the cashier at the gas station at the time of the offense, testified that the gas station's surveillance footage captured multiple angles of the incident on video. The footage first shows Laysha and Figueroa exiting the passenger side of a black sedan driven by Marmolejo. The girls went inside the gas station and went to the restroom. They were smiling and appeared to be laughing when Laysha

–8–

made the call on her cellphone. Marmolejo also exited the sedan and went to the restroom but returned before the girls.

Shortly after everyone returned to the sedan, Garcia arrived in a red Charger. He parked in front of and perpendicular to the black sedan, as if to block it in. He was accompanied by Avila and Gonzalez. Avila exited the front passenger side holding an AR15, walked over to the black sedan, tried to open the driver's side door, and pointed the AR15 at the driver's side window. The video depicts Avila's mouth moving as if he is talking to the passengers but, because there is no sound on the surveillance footage, the record does not show what he said. Garcia exited the driver's side of the red Charger, opened the front passenger door of the black sedan, and leaned over Laysha. For a brief moment, it appears as though Marmolejo is trying to back out, as the car reverses a few inches and then comes to an abrupt stop. A struggle ensued between Garcia and someone in the sedan.

Meanwhile, Avila walked around the rear of the sedan, briefly pointed the AR15 through the front passenger door, which was open at the time, and then broke the rear passenger window. Baez, who was in the back passenger seat on the driver's side of the sedan, exited the sedan and ran with his hands in the air. Avila aimed at him with the AR15 as he was running across the gas station lot, and Baez fell face first to the ground.

Simultaneously, Garcia emerged from the front passenger side of the sedan holding a revolver. Garcia first pointed the revolver at Baez and then pointed it at

Marmolejo, who had exited the driver's side of the sedan, first walking and then running away from the sedan with his hands in the air. Several flashes can be seen coming from the revolver before Marmolejo fell to the ground. Marmolejo tried to sit up but collapsed over on his back.

During the offense, Gonzalez hit on the windows of the sedan and tried to open two of the doors. After Garcia emerged with the revolver, Laysha exited the sedan and walked toward the Charger. Figueroa exited the sedan after Baez and Marmolejo were shot. The entire incident occurred in less than one minute. After the offense, Garcia, Avila, Laysha, Figueroa, and Gonzalez fled in the red Charger.

Ramos and a witness at the nearby intersection called police. After police arrived at the scene, a neighbor informed officers that a red Charger had wrecked in a nearby alley, was not drivable, and had been abandoned. Police then received another 9-1-1 call reporting that people were seen running from the alley into a shed in the backyard of a residence. Ultimately police found Garcia, Avila, Laysha, Figueroa, and Gonzalez in the shed, and they were arrested. Police also found the AR15 Avila used to shoot Baez and the .38 Special revolver Garcia used to shoot Marmolejo in a wooded area adjacent to the alley.

DPD Homicide Detective Phillip Wheeler testified that he learned during the course of his investigation that Avila and Marmolejo had a prior altercation that had caused "bad blood" between them, and Avila was seeking revenge. As he watched the surveillance footage at trial, he commented that Garcia went toward the center

–10–

console of the sedan, which is where Laysha had advised the gun was. He also pointed out that Gonzalez had a hoodie pulled tight around his head by the drawstring so you could not see much of his face.

Dr. Tracy Dyer, the Deputy Chief Medical Examiner for the Dallas County Medical Examiner's Office, performed the autopsies of Marmolejo and Baez. She testified that each died of gunshot wounds. Marmolejo had two gunshot wounds to his back, which perforated his lungs, and another superficial perforating gunshot wound that entered his upper back and exited the bottom of his neck where it met his back. She explained that this third gunshot wound indicated that he was likely falling while still being shot. Baez had one gunshot wound to the back of his head and one to his back.

Garcia testified that he did not know about the robbery plan. Instead, he was trying to rescue Laysha and Figueroa because Avila was "basically telling [him] that they're in trouble," as they had left with some guys, taken Xanax, and the guys would not bring them home. Garcia explained that he and his sister Laysha were very close, that he had previously lost a sister, and that he did not want to lose another one. He did not realize that Avila was lying to him. Garcia also testified he could not communicate with the girls directly because his phone did not work.

According to Garcia, he and Avila left and went driving around looking for Laysha and Figueroa. Avila told him where to drive. They pulled in the gas station, and Garcia saw the car the girls were in, so he parked his car to block them from

leaving. Garcia testified that he went over to his sister. When he opened the car door, Marmolejo aimed the revolver at him. Garcia jumped in the car, struggled with Marmolejo, and took the gun from him. He did not bring his own gun and was not interested in an altercation with Marmolejo when he approached the car. Garcia saw Marmolejo reach for something in the side of the door as he was getting out of the car, and Garcia thought it could have been another gun. Marmolejo and Baez got out of the car and ran. Garcia saw Marmolejo running with his hands up but then he dropped one of his hands and Garcia did not know whether he was reaching for a gun. Garcia testified he feared for his life, so he shot Marmolejo and ran back to his car. He blacked out, wrecked the car, and woke up to everyone screaming at him. He parked it and they ran to the storage shed where the police found them.

On cross-examination, the State showed the surveillance footage to Garcia and asked him about Marmolejo's hand dropping. Garcia responded, "I don't think you can really see it in that video, sir." Our review of one of the angles depicted on the surveillance footage does show Marmolejo's left hand drop down some, and a reasonable juror could have concluded he was holding out his hand to say stop.

Garcia conceded that he did take Marmolejo's gun, even though no one took his money. He also conceded that he shot Marmolejo with the gun; hid it deep in the woods (he guessed because he was scared); knew Avila had a loaded rifle when they went to the gas station because Avila was sitting in the front seat, next to him, and the rifle was between Avila's legs; and knew Avila was going to get out of the

–12–

car with the loaded rifle. Garcia testified that they took the AR15 for protection because they knew the other men would have guns. Garcia also admitted that he knew Marmolejo had a gun in the car, but he thought it had been moved from the center console because that is what Avila said Laysha told him. According to Garcia, everyone knew about the robbery but him.

In closing arguments, defense counsel emphasized that none of the messages coordinating the robbery included Garcia. However, some of the messages did refer to "we" or "us" implying other people were with Avila. The jury was free to disbelieve Garcia's testimony that the did not know about the robbery. Moreover, the jury was able to watch the incident on the surveillance footage. The jury could have found that the incident was an ambush, not a rescue, and that Garcia intended to promote or assist in the robbery by encouraging or aiding Avila in its commission. *See* TEX. PENAL CODE §§ 7.02(a)(2), 29.02(a)(2).

Even if the jury believed that Garcia was initially trying to rescue his sister, the jury could have found that Garcia and Avila conspired to commit aggravated assault because they took the AR15 to threaten Marmolejo and Baez and should have anticipated their murders as a result of confronting and threatening them with a loaded AR15. *See id.* §§ 7.02(b), 22.01(a)(2), 22.02(a)(2).

And, finally, the jury could have also found that Garcia and Avila worked together, as parties to the offense, to murder Marmolejo and Baez, as the surveillance footage showed both Garcia and Avila pointing their weapons at both Marmolejo

–13–

and Baez. *See id.* §§ 7.01(a), 7.02(a)(2), 19.02(b)(1). Texas law does not require a showing of premeditation for a jury to find the defendant intentionally or knowingly caused the death of an individual. *See id.* § 19.02(b)(1); *Rousseau v. State*, 855 S.W.2d 666, 674–75 (Tex. Crim. App. 1993). The intent can be formed at the time the defendant commits the offense. *Rousseau*, 855 S.W.2d at 674. Here, Garcia raised the revolver and aimed it at Baez and then shot at Marmolejo while they were fleeing from the car with their hands up. In that instant, the jury could have reasonably concluded that Garcia formed the requisite intent to kill Marmolejo and assist or promote Avila's murder of Baez. *See* TEX. PENAL CODE §§ 7.01(a), 7.02(a)(2), 19.03(a)(7)(A). The jury could also have found that, in that instant, Marmolejo was not using or attempting to use unlawful deadly force against Garcia or Laysha and that Garcia could not have reasonably believed that his intervention was immediately necessary to protect Laysha or himself. *See id.* §§ 1.07(a)(42), 9.01(3), 9.32(a), 9.33.

We conclude that a rational juror could have found that Garcia committed capital murder beyond a reasonable doubt and also could have found against Garcia on his claims of self-defense and defense of Laysha beyond a reasonable doubt. Therefore, we overrule Garcia's first and second issues.

## Admission of Police Testimony

In his final issue, Garcia argues that Detective Wheeler was not properly qualified to opine and speculate the meaning of each of the abbreviations in the text messages admitted by the State.

In addressing opinion testimony allowed under Texas Rules of Evidence 701 and 702, the Court of Criminal Appeals has explained:

> A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences. However, as a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training. Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert.

*Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002) (internal citation omitted). Rule 701 permits opinion testimony by a lay witness when it is rationally based on the witness's perception and it is helpful to clearly understand the witness's testimony or to determine a fact issue. TEX. R. EVID. 701.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). We reverse a trial court's ruling only if it is outside the "zone

–15–

of reasonable disagreement." *Id.* The trial court is given considerable latitude regarding its evidentiary rulings. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

Here, the trial court allowed Detective Wheeler to testify, in his experience, to the following meanings of abbreviated words or slang found in State's Exhibit Nos. 125, 126, 127, and 128, which were text messages between Laysha and Avila and Instagram messages between Laysha and Marmolejo:

- WYM = what do you mean

- RN = right now

- You got bud? = You got marijuana?

- HN = hell no

- WYA RN = where you at right now

- BD = baby daddy

- PO = Pleasant Oaks

- LMK = let me know

- plug = dealer

- FR = for real

- HB = homeboy

- y'all should have served us = sold us marijuana

- OTW = on the way

- lick = burglary or robbery

- bars = Xanax

- IDK = I don't know

- IDC = I don't care

- WYD = what are you doing

- TF = the f**k

- GTG = got to go

Detective Wheeler testified to these specific meanings, based on his experience, after reviewing the entirety of the communications between Laysha and Avila and Laysha and Marmolejo on the morning in question. Detective Wheeler walked the jury through the messages and showed how Laysha and Avila were plotting to ambush and rob Marmolejo. The meanings listed above gave context to the ongoing plan.

Due to Detective Wheeler's ten-year experience as a police officer, including one year as a family violence detective and two years as a homicide detective, the trial court could have found that the detective's testimony was rationally based on what he perceived in reviewing the messages and was helpful for the jury to determine whether Garcia committed capital murder in the course of committing or attempting to commit robbery. *See, e.g., Arista v. State*, No. 13-13-00701-CR, 2018 WL 637365, at *11 (Tex. App.—Corpus Christi–Edinburg Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in allowing investigator to testify that "hit a lick" meant "to commit [a]

–17–

home invasion" (alteration in original)); *Morgan v. State*, No. 05-16-00257-CR, 2017 WL 2871420, at *3–4 (Tex. App.—Dallas June 29, 2017, no pet.) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in allowing investigator to testify that "PGBC" on computer printout meant "pled guilty before the court"); *Austin v. State*, 794 S.W.2d 408, 409–11 (Tex. App.—Austin 1990, pet. ref'd) (concluding officer's testimony that "Swedish Deep Muscle Rub" was code for prostitution was admissible under Rule 701 or 702). Therefore, we cannot conclude that the trial court's decision to allow Detective Wheeler to testify as to the meaning of the above words and phrases was so arbitrary and outside the zone of reasonable disagreement to be an abuse of discretion. Garcia's third issue is overruled.

## Modification of Judgment

This Court has the power to modify a judgment to speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). Here, the judgment states that the jury was presented with, and returned findings on, special issues as if the State had sought the death penalty against Garcia. *See* TEX. CODE CRIM. PROC. ANN. art. 37.071, § 2(a)(1), (b), (e)(1). However, the State did not seek the death penalty against Garcia and, thus, the special issues were not presented to the jury for consideration. Instead, the trial court assessed the automatic punishment for a capital

murder case in which the State does not seek the death penalty—life without parole.

*See id.* art. 37.071, § 1(a); TEX. PENAL CODE § 12.31(a)(2). Therefore, we conclude

the following portion of the judgment should be deleted:

> The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the special issues set out in the jury charge. After due deliberation, the jury was brought into open court, where it returned its answers to the special issues as indicated below:
>
> (1) The jury found beyond a REASONABLE DOUBT that there is a probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society.
>
> ☒ Yes (unanimous)
> ☐ No (by at least 10 jurors)
>
> (2) The jury found beyond a REASONABLE DOUBT that considering all the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed?
>
> ☐ Yes (by at least 10 jurors)
> ☒ No (unanimous)
>
> __Special Issues to be included if necessary__:
>
> (If Defendant is found GUILTY as a party under TEX. PEN. CODE §§ 7.01; 7.02)
>
> The jury found beyond a REASONABLE DOUBT that the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.
>
> ☒ Yes (unanimous)
> ☐ No (by at least 10 jurors)
>
> (If Defendant has a mental impairment or defect)
>
> The jury found from a PREPONDERANCE OF THE EVIDENCE that defendant is a person with:
>
> ☐ Mental illness
> ☐ Mental retardation

The judgment should also be modified to delete, "JURY," under "Punished

Assessed by:" and be replaced with "Trial Court."

## Conclusion

Having overruled Garcia's three issues on appeal, we affirm the judgment of

the trial court as modified. The trial court is directed to prepare a corrected judgment

that reflects the modifications made in this Court's opinion and judgment in this

case.  *See Shumate v. State*, 649 S.W.3d 240, 245–46 (Tex. App.—Dallas 2021, no pet.).

/Craig Smith/
CRAIG SMITH
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220526F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE ALBERTO GARCIA,
Appellant

No. 05-22-00526-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-2200230-W.
Opinion delivered by Justice Smith.
Justices Molberg and Carlyle
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

to delete:

The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the special issues set out in the jury charge. After due deliberation, the jury was brought into open court, where it returned its answers to the special issues as indicated below:

(1) The jury found beyond a REASONABLE DOUBT that there is a probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society.

☒ Yes (unanimous)
☐ No (by at least 10 jurors)

(2) The jury found beyond a REASONABLE DOUBT that considering all the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed?

☐ Yes (by at least 10 jurors)
☒ No (unanimous)

Special Issues to be included if necessary:

(If Defendant is found GUILTY as a party under TEX. PEN. CODE §§ 7.01; 7.02)

The jury found beyond a REASONABLE DOUBT that the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

☒ Yes (unanimous)
☐ No (by at least 10 jurors)

(If Defendant has a mental impairment or defect)

The jury found from a PREPONDERANCE OF THE EVIDENCE that defendant is a person with:

☐ Mental illness
☐ Mental retardation

–21–

and to delete "JURY" and replace with "Trial Court" under "Punished Assessed by."

As **REFORMED**, the judgment is **AFFIRMED**.

We **DIRECT** the trial court to prepare a corrected judgment that reflects this modification.

Judgment entered this 25th day of July 2023.